WATTS and husband vs. OWENS.

*February 10 — March 3, 1885.*

PARENT AND CHILD: LEGITIMACY.    *(1) Issue of void marriage legiti-mate.    (2, 3) Evidence of non-access: Recitals in deeds.*

ADVERSE POSSESSION: EJECTMENT.    *(4, 5) Character of possession de-termined by deed: Tenants in common.*

1.  A child born within the wedlock of a regular marriage which for any reason (as that the woman had another husband living) is null in law, is nevertheless the legitimate child and heir of both parents.

2.  To bastardize and disinherit a child born in lawful wedlock the clearest and most conclusive evidence of non-access of the husband is required.

3. The rule that recitals in a deed may affect the question of pedigree does not apply to a recital which is, in effect, an admission of non-access between husband and wife, for the purpose of disinheriting a child.

4. The character of the possession of one who claims to have held land adversely under color of title is to be referred to and determined by the conveyance under which he entered; and one who entered and obtained possession under one deed cannot be heard to say that he entered under another and paramount title unless he has done something tantamount to a re-entry.

5. Land was in the possession of the widow (as tenant in dower) and the infant heir of one who died seized thereof. A brother of the deceased obtained a quitclaim deed of the land from another brother and a sister, but took no steps to obtain possession thereunder. Afterwards he obtained from the widow a quitclaim deed reciting that he and his brother and sister were the heirs of the deceased (apparently upon the theory of the illegitimacy of the child), and entered and continued in possession under such latter deed. After attaining majority the heir brought ejectment and the defendant answered claiming title by adverse possession under color of the quitclaim deed from his brother and sister. *Held:*

(1) Not having entered under such deed the defendant could not base thereon his claim of title by adverse possession.

(2) By the quitclaim deed from the widow the defendant obtained only her dower right, and became a tenant in common with the heir.

(3) The recitals in the deed by the mother do not affect the right of the heir.

(4) Having by his answer set up title in himself to the entire estate, based wholly upon adverse possession, the defendant cannot, to shield his possession, claim to hold as tenant in common with the plaintiff.

APPEAL from the Circuit Court for *Ozaukee* County.

Ejectment. The case is sufficiently stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

*George W. Foster,* attorney, and *W. J. Turner,* of counsel, for the appellant.

*J. S. Anderson,* for the respondent.

ORTON, J. The plaintiff *Mary Jane*, joining with her husband, *Frederick Watts*, brings this suit in ejectment against the defendant in possession of the premises in controversy. The main facts in evidence, and upon which depend the principles upon which, in our opinion, the plaintiff is entitled to recover in this action, and which justify the findings and judgment of the circuit court in her favor, are as follows:

In 1845 and 1846 one John Owens acquired title to the premises in dispute from the government, and was then living upon them, in the county of Ozaukee. Soon thereafter Elizabeth Lloyd and her father occupied land about a quarter of a mile distant, belonging to the father. In February, 1847, John Owens intermarried with Elizabeth Lloyd in said county. In May of the same year, John Owens died, seized of said land, and soon thereafter his wife, Elizabeth, removed to the state of New York, and remained there until the last of the year 1847 or the first of the year 1848, when she returned to Wisconsin and went into the occupancy and possession of said land with her daughter, the plaintiff, then an infant of about the age of three months. There is no positive evidence of the exact date of the birth of said infant child, but the above facts lead to the inference that she was born, as the learned judge of the circuit court found, about the 1st of November, 1847, the lawful issue of said John Owens and his wife Elizabeth. There was considerable evidence, by hearsay and reputation, offered, much of which was rejected by the court, that the said Elizabeth had been married before that time to one Jones, in the state of New York, and that there were children, the fruits of that marriage, but there was no positive evidence of such marriage, and there was no evidence of the death of said Jones, or of their divorce.

The said Elizabeth, with her infant child, now the said

plaintiff, resided on and cultivated said land and made improvements thereon until the year 1855. In the mean time, in 1848, the defendant, as the brother of John Owens, deceased, obtained a writing in the form of a quitclaim deed, but without seal, from a brother and sister in Wales, but which was never properly acknowledged or recorded as a conveyance of their interest in said land, but said defendant took no steps to obtain the possession of said land by virtue of the same. In 1855 the defendant purchased of the said Elizabeth Owens, the widow of said John Owens, then so in possession of said land, her interest therein for the sum of $400, and she gave him the following quitclaim deed:

"Whereas, I, Elizabeth Lloyd, also known as Elizabeth Owens, of Saukville, Ozaukee county, being in possession of the lands and premises [in question]; and whereas, *Richard Owens*, brother of John Owens, who entered the lands, inherited a part of said lands, and is grantee of the heirs who inherited the rest: now, therefore, in consideration of the premises, and of $400 to me in hand paid, I hereby deliver up the possession of said lands to *Richard Owens*, giving and granting to him, his heirs and assigns, all right and title, interest or claim, in and to the same.

[Signed]     "ELIZABETH OWENS."

By her mark.

Having obtained said deed, the said Elizabeth Owens, with her infant daughter, left the possession of said lands, and the defendant entered into the possession thereof, and has so continued.

This suit was brought in 1875, and the plaintiff became of age late in 1868 or early in 1869. There was made some question whether the suit was commenced in 1875, but there cannot be any doubt about it, for the record shows that the case was tried upon the first complaint then filed, as amended in 1883, and this disposes of the question raised as to the costs.

The defendant answered, denying the title of the plaintiff, and admitting that he is in possession, but under claim of title in fee; and then alleges that in 1848 Owen Owens and Mary Owens executed a deed of said lands to him, and that in 1855 he entered into the possession of said lands under claim of title exclusive of any other right, founding his claim upon the said deed, as being a conveyance of the premises, and that he has continued in such possession ever since, and has made valuable improvements thereon, and then counter-claims that the right of the plaintiff be barred. It will be observed that the adverse possession set up in the answer is predicated upon that quitclaim instrument from Owen Owens and Mary Owens to the defendant, their brother, without averring that either they or the defendant had any right by reason of their heirship of their brother, John Owens, deceased, so that the only right the defendant sets up to the premises in question is adverse possession under that pretended conveyance, importing the conveyance of the title.

The questions raised upon the record are important, but not very difficult of solution. The printed case of the appellant and the briefs of his able counsel are very imperfect and confused, so far as making the real facts and merits of the case apparent. A very large part of their briefs is addressed to the question which is rendered entirely immaterial by our statute, and that is whether Elizabeth Owens, lastly so called, had a husband living when she was married to John Owens, in 1847. A large amount of testimony, by hearsay and reputation, on that question was taken, and that circumstantial, tending to show that Elizabeth Lloyd had a husband living by the name of Jones when she intermarried with John Owens, and that she had children then living, the fruits of such marriage; but there was no positive evidence of such marriage. The first question we meet in the case is, therefore, whether, admitting such previous

marriage, and that she had a husband living when Elizabeth intermarried with John Owens, which last fact was positively proved by the certificate of marriage and the testimony of the magistrate who solemnized it, in February, 1847, the plaintiff was not the legitimate heir of John Owens by the statute then and now in force in this state.

As early as the Revised Statutes of the territory, of 1839, and ever since, the following provision was and has been in force, viz.: "The issue, also, of marriages declared null in law shall nevertheless be legitimate." The present statute (sec. 2274, R. S.) has changed the phraseology slightly, so as to make the provision more certainly applicable to all possible cases, by saying: "The issue, also, of *all* marriages declared null in law shall nevertheless be legitimate." As far as we can ascertain, this provision has never been called in question or made the subject of adjudication in this court. The provision is as plain as the English language can make it, and it is not open to construction against the obvious import and meaning of the words. It means just this and nothing else: that a child born within the wedlock of a regular marriage, which is null in law, shall, nevertheless, be the legitimate child and heir of each and both parents, so far as the question of legitimacy is concerned. In other words, all such children are legitimate to all intents and purposes. It is a very just and humane provision, and serves to mitigate somewhat the severity of the old law, which visited upon the children the sins of their parents.

Sec. 2330, R. S., prohibits marriages between parties when the wife has a husband or the husband a wife still living; and sec. 2349, R. S., provides that such a marriage "shall be absolutely void." Such a marriage was void at common law. 1 Bish. Mar. & Div. 115. Mr. Bishop says (page 301): "Though at common law the children are bastards, the legislation of the country is tending toward the adoption of the more merciful rules of the modern civil law, as

in some countries modified by the canon law;" and then he enumerates Missouri, and some other states, which have the statute legitimizing the children of marriages between parties having a former husband and wife still living, and he says: "These statutes, being remedial, are liberally construed, and may even be applied retrospectively;" and then cites *Dyer v. Brannock*, 66 Mo. 391; *Lincecum v. Lincecum*, 3 Mo. 441; *Glass v. Glass*, 114 Mass. 563; *Hartwell v. Jackson*, 7 Tex. 576; *Graham v. Bennet*, 2 Cal. 503; *Hiram v. Pierce*, 45 Me. 367; *Earle v. Dawes*, 3 Md. Ch. 230; *Brower v. Bowers*, 1 Abb. Dec. 214. The statute of Missouri of 1825 provided that "the issue of all marriages deemed null in law or dissolved by divorce shall nevertheless be legitimate;" and in *Lincecum v. Lincecum, supra*, it was held that the children born after a marriage in 1810, when the father had a wife then living, to whom he was married in 1802, were nevertheless legitimate under that statute, and inherited as such; and in *Dyer v. Brannock, supra*, it was held that such child, born within the wedlock of the second void marriage, not only inherited as heir, but transmitted as such, and was to all intents and purposes legitimate, and a full heir.

Without pursuing the subject further, the plain and obvious meaning of the language of our statute is amply supported by unquestioned judicial authority in the states where such or a similar statute exists, and the question may be considered at rest. This renders it unnecessary to refer to the indecent and scandalous testimony by hearsay and reputation relating to the first marriage of Elizabeth, the mother of the plaintiff.

The next question raised is that the plaintiff could not have been the child of Elizabeth and John Owens, because of non-access between them after such marriage and before his death. The only evidence on that question was of the flimsiest and weakest character, and consisted of some state-

ments of John Owens, the husband, to certain persons that he and Elizabeth could not live together on account of the opposition of her father, and at some time or other that he had not lived or slept with her, and other remote circumstances. It appeared that after the marriage, Elizabeth having other children, and living with her father in his cabin, and John Owens having a cabin on another tract of land near by, in a wild and unsettled region of country, and heavily timbered, they each remained most of the time until near his death living each in such respective cabins. There was no enmity between them, and not a particle of evidence of their non-access, or of its impossibility or even improbability. They had the most ample opportunities of cohabitation, for aught that appears in the testimony, not only on the day of their marriage, but at all times thereafter. The law upon such question was settled by this court in the late case of *Mink v. State*, 60 Wis. 583, in which it was held that the mother is not a competent witness to give evidence of non-access between herself and husband so as to bastardize her child. That being a case of bastardy, and *quasi* criminal, it is contended that the same rule should not apply to a civil cause. But the doctrine rests upon "the very highest grounds of decency and morality," and applies to all cases. It is decided further, in that case, that "the presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the *clearest* evidence that it was impossible for him . . . to have had access to the wife, or to be the father of the child." Must a child born in lawful wedlock prove that it was begotten by actual sexual connection between its father and mother in order to inherit as an heir? Such a rule would be in flagrant violation of common sense, common decency, and common justice; and no court ever announced such a doctrine. To bastardize and disinherit a child born in lawful wedlock, the most clear and conclusive evidence of non-access

is required; and the plaintiff was so born, so far as the legitimacy is concerned, by virtue of the statute. As to such testimony, see, also, 1 Bish. Mar. & Div. 547, and cases cited in note 2; *Eybert v. Greenwalt*, 44 Mich. 245; *Boykin v. Boykin*, 70 N. C. 262; *Chamberlain v. People*, 23 N. Y. 88, and cases cited.

That the plaintiff was born the daughter of Elizabeth and John Owens, and his lawful heir, late in the year 1847, or early in the year 1848, there can be no question; and this brings us to the question whether the plaintiff is barred by the statute of limitations, or by the defendant's adverse possession under the pretended conveyance of his brother and sister in 1848. It is not alleged in the answer that they had any title whatever to the premises as heirs or otherwise, or that the defendant had any such title or interest. That instrument, not under seal, and never properly acknowledged or recorded, was made and executed by the pretended grantors in Wales, Great Britain; and they, or either of them, never had any possession of said premises, but they were at that time held adversely to them by the widow of John Owens and his heir, the plaintiff. At the common law in force in this state at that time, such pretended deed was void. *Whitney v. Powell*, 2 Pin. 115; *Edgerton v. Bird*, 6 Wis. 527. The answer alleges that the defendant entered under that pretended deed in 1855, and has held adversely to the plaintiff ever since. If he relied on that conveyance, why did he not immediately enter upon the possession under it? The answer is clear enough: that the widow, Elizabeth Owens, and her infant, the present plaintiff, were then in possession, and he could not peaceably enter. They held adversely to the defendant and his grantors. The defendant could not have entered under that deed, believing that he had even color of title, for he knew, or was bound to know, that the pretended conveyance from his brother and sister was absolutely void at common law. In my opinion the

Watts and husband vs. Owens.

*animus* or *intent* with which the entry is made must be *bona fide*,— an entry believing in good faith that the land is his, and that he has title. *Livingston v. Peru Iron Co.* 9 Wend. 511. But, however this may be, there is not a particle of evidence in this case that the defendant ever sought to enter or ever entered the premises under color of said conveyance. In 1855 Elizabeth Owens and her infant daughter were in possession of the premises, cultivating and improving the same, and had been so in possession since early in the year 1848. In 1855 the defendant negotiated with the said Elizabeth for the purchase of her interest in the premises, and in consideration of $400 she sold it to him, and the right of possession of the premises. The plaintiff was then six or seven years old, living with her mother, who was occupying the premises as tenant in dower, and presumably in the right of the plaintiff, also, as the heir. The quitclaim deed itself, hereinbefore set out, executed by the said Elizabeth Owens to the defendant at the time, is sufficiently explanatory of the real nature of the transaction. He obtained the possession by that deed, and that deed only, and he has never notified the plaintiff that he ever pretended to hold the possession under any other right or title. But there is some very strong evidence as to his intent at the time, and his recognition of the title of the plaintiff as heir to his brother, John Owens. The witness Henry M. Jones testified that he knew of the transaction, and the consideration paid for the quitclaim deed of Elizabeth, and that $400 was nothing near the real value of the land at that time, and that he heard the defendant say that "*he supposed he could not hold the land after she* [the plaintiff] *became of age.*" The defendant, on cross-examination, testified that "Elizabeth told him that the young child [the plaintiff] was his brother's, and that his fuss with her was that the child owned the land, and that the reason that Elizabeth would not let him have the land on the deed from his brother and sister was because

she was married [to John Owens] and it was the baby's;" and that "he could not get possession until he paid Elizabeth Owens for the deed."

On this appeal it is now claimed, against the allegations of the answer, that the defendant has established his adverse possession under the deed of Elizabeth Owens and its recitals. The learned counsel of the respondent lays down the proper rule of adverse possession in this case as follows: "The character of the possession of *Richard Owens*, the defendant, is to be referred to the conveyance under which he entered, and is to be determined by it." The defendant entered under that deed of Elizabeth, and so continued to hold to the present time. He cannot now be heard to say that he entered under another or paramount title, unless he has been legally evicted and taken possession under such other or paramount title. If he would hold under title other than that under which he entered, he must do something tantamount to a re-entry under such other title. These principles have grown to be elementary, and have been frequently recognized by this court. *Quinn v. Quinn*, 27 Wis. 168; *Sydnor v. Palmer*, 29 Wis. 226. The above evidence shows that the defendant entered into possession with a full knowledge of the plaintiff's rights as heir, and his entry, as to her, could not be *bona fide*, but in fraud of her rights. He had no right to buy the widow's pretended dower interest and her right of possession, and thus collude with her to dispossess the plaintiff of her lands at an age when she was under disability and the control of her mother, and thus attempt to obtain adverse possession against her. *Livingston v. Peru Iron Co.* 9 Wend. 511; *Clapp v. Bromagham*, 9 Cow. 530; Kerr on Fraud & M. 51; *Winslow v. Crowell*, 32 Wis. 639. Elizabeth Owens held a pretended right of dower in the premises, and the defendant purchased said right, and thereby secured the possession against her. The plaintiff, as heir of John Owens, and then an infant, was in joint pos-

session, and a tenant in common with her, and has never surrendered such possession or been ousted therefrom until notice in this action; and the defendant when he purchased the right of the widow and went into possession, went into joint possession with the plaintiff as such heir; and the defendant having never pretended or notified her that he held adversely to her title, or ousted her from the possession, until the commencement of this suit, and setting up adverse possession against her therein, he must be held to have always held and enjoyed the possession subordinate to her title, or at least in recognition thereof, and as tenant in common with her. *Hall v. Mathias*, 4 Watts & S. 331; *Gorham v. Daniels*, 23 Vt. 600; *Dummerston v. Newfane*, 37 Vt. 9.

But it is useless to pursue this subject further, for there is no principle, legal or equitable, ever recognized by any respectable authority, however technical, that could justify the defendant, under such circumstances, to set up adverse possession against the plaintiff to defeat her recovery as sole heir to the premises.

It is further insisted by the learned counsel of the appellant that the defendant may retain possession by virtue of the dower interest he obtained by virtue of the deed from Elizabeth Owens. But that is not the defense in this case. He sets up adverse possession to bar a recovery by his cotenant, and in hostility to her rights. He has thereby ousted her of her possession, and in such case she may bring ejectment. *Challefoux v. Ducharme*, 4 Wis. 554. Had the defendant answered, acknowledging the right and interest of the plaintiff, and insisting upon his right as her co-tenant, he then might consistently ask that he be not disturbed in the joint possession, and might have had the benefit of her improvements. But such is not his answer. He claims the whole estate and denies all right in the plaintiff. He must not now, after the trial, seek to change the issue and claim as a tenant in common only.

There is another question, if it can be called such, and that is that the recitals in the quitclaim deed of Elizabeth Owens to the defendant recognize his right as heir to his brother, John Owens, deceased, and his title acquired by the quitclaim instrument from his brother and sister against the plaintiff. The proposition bears an absurdity on its face. The widow is in possession as tenant in dower with her infant child, the sole heir of the estate. She sells out her right and surrenders the possession, and takes the infant heir away with her. She does not pretend to convey any right of the heir, as her guardian or otherwise. She admits in the preamble of her deed, by recitals, that the defendant has the full title, even against her infant child, whose right as sole heir is unquestionable. She virtually admits by such recital that her child is illegitimate. This, we have already shown, she cannot do. She cannot even testify that she is illegitimate by reason of non-access to her husband, much less can she effect the same purpose by a mere admission. Besides, the evidence shows that the defendant was well aware of the heirship of the plaintiff, and admitted her right, and when spoken to about the small consideration of said purchase from the widow, admitted that he could not hold longer than when the plaintiff had become of age. To allow such a doctrine in such a case would permit the widow and mother, in possession as tenant in dower, to disinherit all of the heirs by a mere recital. If the plaintiff had then been of age, no one would pretend that the widow could have disinherited her in this way; much less when she was an infant under her care. If she attempted to do so by collusion with the defendant, it would be an attempted fraud of the basest character. The rule that recitals may affect the question of pedigree cannot be extended to embrace such as is, in effect, an admission of non-access between the father and mother, for the purpose of disinheriting a child. 1 Phil. Ev. 207. In *Aguirre v. Alexander*, 58 Cal. 21, the defend-

ants acquired their right by purchase under foreclosure of a mortgage executed by the widow in possession. It was held, in ejectment by the heirs, that the widow was tenant in common with the heirs, and that she could do nothing to prejudice their rights, and that the defendants held as tenants in common with the heirs, and that they (the plaintiffs) could bring ejectment against the defendants when they notified them that they claimed the whole estate and held adversely to the plaintiffs. See, also, as to the rights of tenants in common, *Miller v. Myers*, 46 Cal. 535; *Gillaspie v. Osburn*, 3 A. K. Marsh. 77.

This disposes of all of the material questions in the case, in consonance with the findings of the circuit court: (1) The plaintiff was the legitimate and lawful and sole heir of John Owens, deceased. (2) There was no proof of nonaccess of her father and mother after their marriage and before his death. (3) There was no proof of any adverse possession by the defendant against the plaintiff, who has always been his co-tenant, without notice that he held, or intended to hold, adversely to her right, and his possession during all the time before the commencement of this suit is her possession and can be referred only to the quitclaim deed of Elizabeth Owens of her dower interest and possession, under and by virtue of which he entered. (4) The defendant having set up adverse possession against the plaintiff as his only title, he cannot now, after judgment, claim to hold as tenant in common with her to shield his possession. (5) The recitals in the deed of Elizabeth Owens to the defendant, recognizing his interest as heir, and as holding the interest of his brother and sister, do not affect the plaintiff's right as sole heir. The questions so ably discussed by the learned counsel on both sides, and involved in the record, are important, but not very complicated.

It is to be regretted that so much indecent and scandalous testimony was given and offered in respect to the previous

marriage of Elizabeth Owens with one Jones, and her incestuous relations with her father, and her previous life and character, when it could have no possible bearing upon the real questions in controversy, and only served the purpose of disparaging the plaintiff on account of the character of her mother. It is proper to say that, notwithstanding such testimony, the plaintiff stands upon the record a pure and honest woman.

*By the Court.*— The judgment of the circuit court is affirmed.