ROMANOWSKI, Appellant, vs. ROMANOWSKI, Respondent.*

*February 15—April 14, 1944.*

* Motion for rehearing denied, without costs, on June 6, 1944.

*W. G. Cavanaugh, Jr.,* of Milwaukee, for the appellant.
*Max E. Geline* of Milwaukee, for the respondent.

WICKHEM, J.   The divorce action between these parties was set down as a default, defendant having filed no answer, and was so tried on December 4, 1941.   The ground of divorce was voluntary separation in excess of five years.   The complaint alleged the birth of one child to the parties two weeks prior to the marriage.

From the evidence adduced upon the default hearing, it appears that on March 31, 1939, defendant gave birth to a second child, Bernadine.   Plaintiff had never contributed, nor had he been asked to contribute, to the expense of confinement or support of this child.   The parties were married on February 18, 1928, separated in March of the same year, and had lived apart ever since.   Plaintiff was asked by counsel whether he had marital relations with defendant during this period, but the court did not permit him to answer.   Later defendant was asked whether some proceedings had not been started to establish that a man other than plaintiff was the father of the second child.   She at first answered this question "Yes" and then changed her testimony and said that no such proceedings had been started.   There were some admonitions by the trial court as to the sort of testimony necessary to rebut the presumption of legitimacy, but the above summary represents all the evidence in any way bearing upon the parentage of Bernadine.   The findings of the trial court were to the effect that both girls were children of plaintiff and the judgment so adjudicates.

Upon this hearing defendant testified that $6 per week was insufficient allowance to support both children; that she lived with her parents and was supported by them; that her mother was of advanced years and unable to continue contributing to her support but that her father was working.   The judgment contained an allowance of $6 a week for the support of the elder child but none for the support of the younger child. The custody of both children was given to defendant.

Some two years later these proceedings to obtain allowance for the support of the younger child were commenced by defendant and hearings were held on February 19 and March 12, 1943. Defendant's testimony was to the effect that she was presently unable to support the second child without an allowance from plaintiff. She gave as a reason that since January, 1943, her father had been laid up at home with blood poisoning and that about February 1, 1943, her mother had sustained a heart attack; that she herself had commenced working at fifty-five cents an hour in a factory, but had as yet received no check; that the child had need of clothing and other supplies. It also appeared that plaintiff's wages had increased by about $7.50 a week in the interval.

Upon the basis of this testimony the trial court ordered plaintiff to pay $20 a month to defendant for the support of the child, Bernadine. Plaintiff asserts that defendant, by not asking for support money at the time of the original divorce, is now foreclosed from doing so, (1) because the judgment of divorce has become final, and (2) because, in any case, she has waived her rights to such support money. A considerable portion of plaintiff's brief is taken up with a discussion of the presumption of legitimacy. We are clear enough that this is of no materiality here. Its only purpose could be to relitigate the question whether plaintiff is the father of the child, Bernadine, and this plaintiff may not do. In the divorce action this was found as a fact. The judgment so adjudicated. This issue is finally and fully settled as between these parties and is beyond the reach of any new contentions, whether the conclusions of the trial court were erroneous or not, although as we read the evidence upon the original divorce hearing, we discover nothing to rebut the presumption of legitimacy. However, even if the court was in error in its findings and adjudication, the judgment is unappealed from and beyond the possibility of review or revision.

Plaintiff's contention, that the omission in the divorce judgment of provisions for the support of Bernadine is a final

action in that respect, cannot be sustained. The divorce terminated only the relationship of husband and wife. It did not affect in any manner the parental relations or duties of plaintiff. In *Zilley v. Dunwiddie,* 98 Wis. 428, 432, 74 N. W. 126, this court said:

"Hence the father's duty to maintain them after the divorce, where there is no decree of the court relating thereto, especially if their custody is not taken from him, remains as before."

See also, in this connection, *Szumski v. Szumski,* 223 Wis. 500, 270 N. W. 926; *Lewis v. Lewis,* 201 Wis. 343, 230 N. W. 77.

In addition to the foregoing, sec. 247.25, Stats., provides:

"The court may from time to time afterwards, on the petition of either of the parties, revise and alter such judgment concerning the care, custody, maintenance and education of the children, or any of them, and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require."

Sec. 247.32, Stats., provides:

"After a judgment providing . . . allowance for . . . the court may, from time to time, on the petition of either of the parties, revise and alter such judgment respecting the amount of such . . . allowance and the payment thereof, . . . and . . . make any judgment respecting any of the said matters which such court might have made in the original action. . . ."

The power of the court to act is clear enough under these sections. In matters relating to alimony and custody, however, this court has held that in the absence of a substantial change in the premises on which the original determination was made, a modification or revision is an abuse of discretion. *Littig v. Littig,* 229 Wis. 430, 282 N. W. 547 (having to do with alimony), and *Application of Rattel,* 244 Wis. 261,

12 N. W. (2d) 135 (having to do with custody). There is no Wisconsin authority dealing with the question whether a change in allowance for the support of a minor child in the absence of a change in condition of the parties is an abuse of discretion. Other courts intimate pretty strongly that there must be an alteration of circumstances to warrant a modification. See *Snyder v. Snyder,* 219 Cal. 80, 25 Pac. (2d) 403; *Gould v. Gould,* 226 Mich. 340, 197 N. W. 505; *Williams v. Williams,* 127 Miss. 627, 90 So. 330.

While it can be argued with a great deal of force that a trial court should be allowed to modify any allowance presently found to be insufficient, even though this involves recognition that the original judgment was inadequate, we do not need to determine this point. The circumstances of the grandmother's heart attack and the grandfather's illness, together with testimony which the trial court could believe that the necessities of the child were not being met, amply warranted the trial court in making an allowance which evidently was not much insisted upon at the original divorce hearing and the necessity for which did not there strongly appear. We conclude, therefore, that the order of the trial court must be affirmed.

*By the Court.*—Order affirmed.

FAIRCHILD, J. (*dissenting*). The record on this appeal presents important and material evidence bearing upon the fundamental question in this controversy. The facts established leave no room for doubt that the provision in the judgment "that no support money shall be paid on behalf of the minor child, Bernadine" was as just and as equitable an arrangement of affairs as could be made under the circumstances. There are two aspects of the matter of consequence here. When the judgment was entered at the conclusion of the trial, the court was of the opinion that the legal presumption to which it referred did not necessarily control the

equities of the case. The judgment was against the appellant on the point of parenthood but it was in his favor on the point of support for the child born after the separation. It plainly appears from the return made by the trial court what the true situation was. It is apparent that the burden of supporting the child was not placed upon the husband but was placed upon the mother for a good and sufficient reason. No appeal was taken by the wife from that part of the judgment which was against her. No appeal was taken by the husband from the holding against him. The result was then accepted by both parties on that basis. No fact now relied on was then overlooked. And there has been no such change since in the circumstances as in equity now can warrant the court in changing the judgment or in making a new judgment or in entering the order now appealed from pursuant to sec. 247.25, Stats. It seems to me that we are now ruling that a change may be made in such a judgment whenever the trial judge may be moved to do so, although "It has been repeatedly held by this court that a judgment in a divorce suit . . . does not prevent the court from afterwards modifying the judgment under sec. 2369, R. S., *if the circumstances of the parties have so changed as to render such modification just and equitable.*" *Blake v. Blake,* 68 Wis. 303, 308, 32 N. W. 48. See also *Estate of Wakefield,* 182 Wis. 208, 216, 196 N. W. 541; *Gould v. Gould,* 226 Mich. 340, 197 N. W. 505; *Bauman v. Bauman,* 18 Ark. 320; *Gavel v. Gavel,* 123 Cal. App. 589, 11 Pac. (2d) 654; *Snyder v. Snyder,* 219 Cal. 80, 25 Pac. (2d) 403; *Molema v. Molema,* 103 Cal. App. 79, 283 Pac. 956; *Simpson v. Simpson,* 51 Idaho, 99, 4 Pac. (2d) 345; *Williams v. Williams,* 127 Miss. 627, 90 So. 330.

The welfare of children and the proper provision for a child's support are matters of primal concern. They are present when a judgment in a divorce suit is granted as well as after it has been entered. If, when first up for consideration, equity and justice require a particular provision in a

special instance, the facts if unchanged which controlled then, ought to continue to have the thoughtful concern of the chancellor.

Upon the matter now before us, it very evidently is not a change in the condition or circumstances that prompted the application to shift the burden from where it belonged to the shoulders of one where it should not be placed, but a desire by the petitioner to have a review of the then existing circumstances with particular emphasis upon the declaration based on the fact that the child was born before the divorce was granted. The present order appears to be granted because of a continuing misunderstanding of the purpose of a rule of evidence. While the court below or this court—the judgment not having been appealed from—may not be able to overtake and correct the error made in rejecting evidence, the decision on this present application ought to be affected by a full recognition of the reasons originally present and prompting the original order and judgment.

It may be that nominal parenthood under the circumstances is not to be challenged in a proceeding between the immediate parties—the child is not a party to this action nor is the state— but the question of equitable distribution of burden is still a matter within the control of the court. It appears that the circuit court would have refused to change the judgment of 1941 upon the application in 1943 but for the declaration of parenthood in the 1941 judgment. Under the circumstances, I am of the opinion that the court ought to say, and with good reason, that it is inequitable to now disturb the situation fixed in the judgment entered in the suit for divorce. All the circumstances that can suggest the proper place for the burden were disclosed and a judgment was consideredly formed and pronounced. A new judgment may be entered in matters affecting children but even then the proceeding must be based on cause and be according to correct principles of equity. So that even though now bound by the technical and ancient

common-law presumption of legitimacy and the exclusion of some evidence that might have been clarifying, still enough appears to form a ground for the equitable adjustment made by the court in that original judgment.

The advantage of nominally giving the child a status of legitimacy did not particularly embarrass the husband and he did not appeal. However, the justice of relieving him from support of the child was so apparent that the wife did not then ask for an allowance. And as we have pointed out, she did not appeal from a ruling that was clearly adverse to her. The fact that public authorities have lately been unduly impressed by the efficacy of the legitimacy presumption does not necessarily control. It does not follow that a sequence of conclusions based alone on that single pronouncement will lead to a just result.

We find in the record this statement by the learned trial judge: "This is an application directed to the court to declare and set an amount of support money for a minor child of the defendant, Frances Romanowski, which the court in its judgment declared was born in lawful wedlock, but for which the court made no allowance of support money, that is, I mean, that the court directed that the plaintiff need pay no support money for this child in view of the circumstances elicited at the trial."

The presumption of parenthood as affecting appellant was so effectively controverted by the determination of the controlling issue in the divorce proceeding as to place beyond question that the court's original decision not to require support money was the only equitable result that should have been reached.

As I have said, the divorce was granted pursuant to sec. 247.07 (7), Stats., which allows a divorce to be granted "whenever the husband and wife shall have voluntarily lived entirely separate for the space of five years next preceding the commencement of the action." The court found that Berna-

dine was two years old. She must necessarily have been conceived within the five-year period during which the trial court found the parties had lived separately and apart. That finding like others is now to be accepted. Had appellant been the father of the child, the divorce would have been denied.

The trial court was convinced that the parties had not lived together as man and wife preceding the action. The divorce was granted "and in view of the circumstances elicited at the trial" the court did not allow support money for this particular child.

The difficulty arises from a misunderstanding of the nature of the ancient common-law presumption of legitimacy. It is well settled that this presumption is "one of the strongest presumptions known to the law." As has been suggested, it may be that the finding that the child was born in wedlock cannot as between these parties now be set aside. But, in the matter now before us, the trial court was again erroneously using the presumption to the disadvantage of appellant. Its conclusion is that it is inequitable to make the order that it did but as a matter of law it was helpless.

This presumption of fact can be rebutted and "may be wholly removed by proper and sufficient evidence showing that the husband was, (1) incompetent; (2) entirely absent, so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse." *Riley v. State*, 187 Wis. 156, 159, 203 N. W. 767; *Shuman v. Shuman*, 83 Wis. 250, 256, 53 N. W. 455; and *Estate of Lewis*, 207 Wis. 155, 240 N. W. 818. See also *In re Findlay*, 253 N. Y. 1, 170 N. E. 471. Of course, evidence of a substantial nature is necessary to rebut the presumption. It is not, however, a conclusive presumption and if the evidence of separation on the trial was considered sufficient to

grant a divorce from the bonds of matrimony, that evidence surely should have been sufficient to rebut the presumption of legitimacy. It would at least be sufficient evidence to warrant the judgment "that no support money shall be paid on behalf of the minor child Bernadine." It would indeed be a paradox to say that evidence of separation sufficient to constitute grounds for granting a divorce is not sufficient to rebut this ancient presumption and capable of supporting an adherence to the solemn judgment that appellant be excused from supporting the child.

The learned trial judge said in his opinion: "The court was satisfied that the cause of action had been established, but in view of the existence of the child Bernadine was compelled, on the basis of the ancient presumption of the common law, to declare that the said child was born in lawful wedlock and was therefore legitimate."

Now, the presumption is again relied on to change the situation of the parties as to supporting the child. But it appears that originally, at least, the presumption operated only to give the child the benefit of the use of the description "legitimate" in the judgment of the court. If the force of the presumption stops where the court first left it, the inconsistencies existing might not be so glaring. But when rights and duties of a stranger to the child are created and when a new effort for a new judgment is made and this artificial relation is relied on to change the original judgment, it does seem that an opportunity for a consideration of the conclusiveness of the matter should be afforded.

I recognize the complexity of the problem with which the trial court was confronted and appreciate that in his ruling he was undoubtedly influenced by language repeated many times by this court that "husband and wife are alike incompetent witnesses to prove the fact of nonaccess" by the husband. *Mink v. State,* 60 Wis. 583, 19 N. W. 445; *Watts v. Owens,* 62 Wis. 512, 22 N. W. 720; *Shuman v. Shuman, supra.* Since

here it was principally the testimony of the parties themselves on which the judge relied in granting the divorce, he felt constrained to disregard such evidence and to yield to the presumption of legitimacy. This case is an illustration of the necessity for limitations to the rule, at least in proceedings other than filiation proceedings.

The criticism of the rule in 7 Wigmore, Evidence, pp. 358, 368, secs. 2063 and 2064, as not based on any logical principle when brought into play in such a case as this may well be referred to. A reading of the observations of Prof. Wigmore brings to the front the proposition that the growth of the rule was due to a following of precedent without regard for the existence of the rule. The rule in the beginning had its reason in the disqualification by interest, of wife or husband as witnesses; a rule long since outlawed by statute in Wisconsin. Secs. 325.13, 325.18, Stats. The only reason which remains for the perpetuation of the ruling, according to Prof. Wigmore is found in Lord Mansfield's utterance in 1777 in *Goodright v. Moss,* Cowp. 591, that the "law of England" as well as "decency, morality, and policy" forbade a parent's testimony to nonaccess. These bases for the rule seem hardly tenable when we reflect that a wife is allowed to testify to adultery, or a single woman to illicit intercourse. There seems to be no sufficient reason from the point of view of public policy for recognizing that rule of evidence as extending as far as it was permitted to in this case.

The equitable arrangement made by the trial court when it originally refused to allow support money for the younger child should continue. And the order allowing support should be reversed.

It is unfortunate that a misunderstanding of the rule referred to, should have prevented up to now the proper authorities, on complaint of respondent, from bringing proceedings for support against the true father. However, the

mistake should not be cured by the unjust imposition of the burden upon an innocent man.

I am authorized to say that Mr. Justice FRITZ and Mr. Justice BARLOW join in this dissent.