STATE EX REL. HANNON, Appellant, vs. EISLER and another, Respondents.

*June 3—June 28, 1955.*

470

For the appellant there were briefs by *Sanborn, Lamoreux & Pray* of Ashland, and oral argument by *Theron P. Pray.*

For the respondents there was a brief and oral argument by *Thomas M. Anich* of Ashland.

STEINLE, J. The plaintiff, Robert H. Hannon, and the defendant, Maureen Eisler, are the parents of the three children involved in this custody controversy. The parents were married in Winnipeg, Manitoba, Canada, in 1944, the father at the time being a resident of Texas and the mother then living in Manitoba. Following the marriage they resided in Texas. The mother secured a divorce from the father in Texarkana, Bowie county, Texas, in 1947. The custody of the children was awarded to the mother under the provisions of the decree. The oldest child is a girl born September 7, 1945. The others are twin boys born November 7, 1946. The decree provided that the mother was to keep the children in Texas for six months of each year. It also directed that the father was to pay support money as specified, and that he was privileged to have the children with him during stated periods in the summer months of each year. The mother left Texas with the children in 1948 and went to Winnipeg, Canada, where she has resided since. The children were never returned to Texas by her thereafter. Pursuant to arrangement with the father the children were brought by the mother to Lakewoods, Namakagon township, Bayfield county, Wisconsin, for one month in each of the summers of 1951 and 1952 where they visited with the father.

After returning to Winnipeg in 1948 the mother and four of her adult sisters, three of whom had not been married and one who was a divorcee with a child, purchased a dwelling

house in Tuxedo, a suburb of Winnipeg, where all of these sisters, the children involved here, and the child of the divorced sister thereafter lived. On December 19, 1952, the mother married Edward N. Eisler, codefendant, in a secret wedding ceremony. On May 16, 1953, the mother and Mr. Eisler went through a public marriage ceremony, and Eisler moved into the home where the mother and the children lived. On December 19, 1952, one of the mother's sisters left the home. On May 6, 1953, two of the other sisters left. About July 15, 1953, the last of the sisters removed from the home. In May, 1953, Robert H. Hannon commenced an action in the Winnipeg juvenile and family court for the right of access to the children. The mother of the children applied for their sole custody and the father then petitioned for sole custody. On August 16, 1953, the Winnipeg juvenile and family court awarded the custody of the children to the father. It appears that during the course of the litigation which resulted in the custody award to him, the father changed his domicile from Texas to Bayfield county, Wisconsin. The father removed the children from Winnipeg to Lakewoods resort in Bayfield county. On October 31, 1953, Mr. and Mrs. Eisler purchased a home in Winnipeg to which they moved from the place in Tuxedo. Mrs. Eisler appealed to the Winnipeg county court from the decision of the Winnipeg juvenile and family court and sought a trial *de novo*. Hannon petitioned the court of Queens Bench for a writ to prohibit the county court from trying the issue *de novo*. The petition was denied. Thereafter he appealed from that order to the court of appeals of Manitoba. In the meantime the county court of Winnipeg tried *de novo* the issue of custody and on December 18, 1953, rendered a judgment whereby it awarded the custody of the children to the mother. Hannon appealed from this judgment to the circuit court of appeals of Manitoba. On December 16, 1954, that court decided both of the pending appeals on jurisdictional grounds in favor of

Hannon and restored the judgment of the juvenile and family court under which custody had been awarded to him. On April 26, 1954 (which was subsequent to the Winnipeg county court's determination and prior to the disposition by the Manitoba court of appeals), the defendants, Mr. and Mrs. Eisler, met the three children at their school in Cable, Wisconsin, and took them in their automobile and drove to Hayward, Wisconsin, where they were intercepted by the sheriff of Sawyer county. Later on the same day the sheriff of Bayfield county served upon the defendants the warrant in lieu of a writ of *habeas corpus* in this action. On the return date, April 30, 1954, the circuit court for Bayfield county placed the children in the temporary custody of Dagmar Hendrickson in Bayfield county pending the decisions of the Manitoba court of appeals. Those decisions were rendered on December 16, 1954. On December 28, 1954, the trial in the instant proceeding was commenced.

The trial court ruled that comity required that the judgment of the Winnipeg juvenile and family court would be continued unless a substantial change in the circumstances of the parties was established. Such change was found to have occurred. In its findings of fact the court determined that the judgment of the Winnipeg juvenile and family court awarding the custody of the children to Mr. Hannon had been based upon the following considerations:

"A lack of candor on the part of Maureen Eisler and a greater regard for the testimony of R. H. Hannon; the court was not satisfied with the explanation given in regard to the liquor purchased by the defendants and other members of their household although nothing was said in the court's opinion about excessive drinking; the court was not satisfied with regard to the explanation of the marriage of E. N. and Maureen Eisler, that is the marriage that was celebrated in December, 1952, and recelebrated in May, 1953; that R. H. Hannon had greater financial means than did E. N. Eisler and Maureen Eisler; that E. N. Eisler would pay more attention to any children born of the Eisler marriage than to the

children in question; that court found that R. H. Hannon was a fit and proper person to have the care and custody of the children but made no specific finding as to whether Maureen Eisler was a fit and proper person to have the care and custody of the children."

In the findings of fact the court also determined that:

"That since August 18, 1953, there has been a change in circumstances in that the expected children of the Eisler marriage, one of the things upon which the Canadian court based its decision, no longer can come into being; that there has been a change in circumstances regarding the liquor and any apprehensions of the Canadian court in that respect are no longer in existence and that this court is perfectly satisfied as to the explanation of the second marriage of Maureen Eisler, nor is there any question either as to the propriety of her conduct or as to the validity of such marriage.

"That the defendant, Maureen Eisler, is a fit and proper person to have the care and custody of said minor children of the parties and that the Eisler home and the surroundings are proper and satisfactory for the raising of children; that the plaintiff, R. H. Hannon, has been a good and kind father and is also a fit and proper person to have the care and custody of the said children; that the home in which he has had the children since August, 1953, both at Lakewoods and the Hendrickson home, have been fine for the raising of these children and that the children have been happy, contented, and well cared for; that the children would prefer to remain with the father but that such preference is not based upon a greater love for the father over the mother but is rather based upon an expectation of receiving more gifts from the father than from the mother and expecting to be given greater latitude for play with the father than with the mother; and that the children are of tender years."

In the judgment there is a provision that the plaintiff Robert H. Hannon is permitted to have the children with him from the 15th day of June until the first day of September of each year, and for a week and a half in alternate Christmas seasons. By order of the court the effectiveness of the entire

judgment was stayed pending an appeal to this court. The temporary custody of the children was continued in Dagmar Hendrickson pending this appeal.

It appears from the evidence that the plaintiff, Robert H. Hannon, is an independent oil operator who owns royalty interests in oil producing properties in Oklahoma, Louisiana, North Dakota, Saskatchewan, and Manitoba. His income is about $1,000 to $1,500 per month. His business interests require but slight absence from his home in Lakewoods. The defendant, Edward N. Eisler, is a sales representative for L. E. Waterman Pen Company. His salary is about $9,000 per year.

The plaintiff contends that there has not been a sufficient change in the circumstances of the parties to warrant a change of custody. The defendant submits that the change of circumstances as indicated by the evidence is substantial, and warranted the transfer of the custody. The trial court found that the circumstances of the parties had changed since August 18, 1953, when the Winnipeg juvenile and family court awarded the custody to the father.

Questions of custody of children are always open to revision by the court upon change of circumstances requiring or justifying change, upon application of either party. *Lerner v. Lerner* (1948), 252 Wis. 87, 31 N. W. (2d) 208. However, it is the rule in this state that a substantial change in circumstances must be established in order to warrant a change in the custody of children. In *Hill v. Hill* (1950), 257 Wis. 388, 391, 43 N. W. (2d) 455, it was said:

"It has been repeatedly held by this court that a judgment in a divorce suit does not prevent the court from afterward modifying a judgment under sec. 247.24, Stats., if the circumstances of the parties have so changed as to render such modification just and equitable. In matters relating to custody, however, this court has held that in the absence of a substantial change in the premises on which the original

determination was made, a modification or revision is an abuse of discretion. *Smith v. Smith* (1932), 209 Wis. 605, 609, 610, 245 N. W. 644; *Application of Rattel* (1943), 244 Wis. 261, 265, 266, 12 N. W. (2d) 135; *Romanowski v. Romanowski* (1944), 245 Wis. 199, 203, 204, 14 N. W. (2d) 23."

Neither the record of the divorce trial in Texas nor that of the litigation over custody in Canada was before the trial court in this cause. In evidence, however, was a statement of Judge HEANEY who presided over the Winnipeg juvenile and family court when the custody of the children was awarded to the father. The plaintiff, in his brief on this appeal, has presented a digest of Judge HEANEY's statement which appears to be accurate. It reads:

"Judge HEANEY's statement showed that he based his decision on:

"1. The paramount interests of the children.

"2. The relatively more stable financial situation of the father.

"3. The sincere interest of the father in the children.

"4. The relatively greater interest of the natural father as compared to the stepfather plus the likelihood that the stepfather would have his own children.

"5. The court's doubts as to the veracity of the mother:

"(a) As to the furnishing of a home for her by the father.

"(b) As to her claim that the father denied her medical attention.

"(c) As to her explanation of a 'secret' marriage to Mr. Eisler.

"(d) As to the purchase and consumption of liquor by members of her household.

"6. That there was too much liquor purchased by members of the mother's household.

"7. The court's satisfaction as to the honesty and trustworthiness of the testimony of the father."

In his statement Judge HEANEY found that the father was a proper person to have the custody and that it was for the best interest of the children that the custody be awarded to him. He made no observation in his statement with respect to the fitness of the mother.

The plaintiff concedes that two changes have occurred in the circumstances of the defendant since the Winnipeg juvenile and family court rendered its judgment,—one that the Eislers have moved into a different home and the other that Mrs. Eisler can bear no more children,—but denies that either change is substantial. Plaintiff submits that all of the defendant's sisters had moved from the home in Tuxedo prior to the conclusion of the trial in Judge HEANEY's court, and that it is to be considered that said court was aware of the change in the liquor purchases from the Manitoba liquor commission by the remaining members of the household, Mr. and Mrs. Eisler, after the sisters left. It is the plaintiff's position that no change in such respect was established in the case at bar. The plaintiff also maintains that the public marriage ceremony of the Eislers was a matter of record in the proceeding before Judge HEANEY and that a consideration thereof was not proper in the instant proceeding.

The trial court found that the new Eisler home and surroundings are proper and satisfactory for the raising of the children. The Winnipeg juvenile and family court had determined that the Tuxedo home did not provide a suitable environment for the children in view of the amount of liquor that was brought there. The evidence in the instant case justifies a conclusion that there is no excessive drinking in the present household. The trial court found a change of circumstances regarding the liquor situation and declared that any apprehensions of the Canadian court in that respect are no longer in existence. There is an abundance of competent evidence to sustain such findings. It is considered that the

conditions under which the Eislers live in their new home is a material and substantial change compared with the situation that existed previous to the Canadian court's determination.

The fact as found by the trial court that the mother can no longer bear children also constitutes a substantial change in circumstances. Judge HEANEY in his statement had expressed a belief that the natural father would have a greater interest in the children than would Mr. Eisler, coupled, with the likelihood that Mr. Eisler would have children of his own. Judge HEANEY indicated that there was no doubt that both Mr. Hannon and Mrs. Eisler were deeply interested in their children. The Canadian court's concern for a preference by Eisler of children that might be born as the issue of his marriage with the defendant, is now removed. It must be noted that the Canadian court was specific in its statement that it found nothing derogatory concerning Mr. Eisler. Judge HEANEY had expressed dissatisfaction with regard to the explanation concerning the secret marriage of the Eislers. He expressed a doubt as to whether all of the facts relative to that matter had been revealed. Obviously in the instant matter when finding that there was now no question as to the validity of the marriage, the trial court assumed that the Canadian court may have had in mind some consideration other than that of Mrs. Eisler's credibility.

The plaintiff complains that the trial court permitted testimony over objection regarding some matters which antedated the decision of the Winnipeg juvenile and family court. The Canadian court had made no finding with reference to the mother's fitness to have custody. In *Hill v. Hill* (1949), 257 Wis. 388, 392, 43 N. W. (2d) 455, it was said:

"Testimony of events preceding a judgment of divorce is admissible in a subsequent hearing to determine custody when there has been no prior adjudication that the mother was a fit and proper person to have the custody of the child." See

also *Wall v. Wall* (1948), 252 Wis. 339, 345, 31 N. W. (2d) 527.

The evidence regarding events prior to the Canadian court's decision and considered to a degree by the trial court, pertained principally to items that Judge HEANEY commented upon in his statement relative to the purchases and consumption of liquor by members of the household; the likelihood of the Eislers to have children of their own; and the validity of the Eislers' marriage. Since the trial court did not have before it the record of proceedings in the Canadian court, it seems reasonable that it was entitled to obtain an understanding of the bases upon which Judge HEANEY's decision was grounded. The plaintiff contends that the trial court in effect reversed the decision of Judge HEANEY. The contention has no merit. The trial court found that substantial changes had occurred. It determined that the conditions in the Eisler new home were materially different especially with regard to the amount of liquor brought there. It does not appear from the evidence that there is excessive drinking in the home. Judge HEANEY had made no finding in such regard. The court found that previous to the Canadian decision the mother was capable of bearing children but that she is now precluded in such regard by virtue of her physical situation. It found that if by virtue of Judge HEANEY's decision there was a cloud upon the Eisler marriage, such now no longer existed.

The welfare of the children is, of course, the controlling consideration of a court in granting or changing the custody. *Hamachek v. Hamachek* (1955), ante, p. 194, 70 N. W. (2d) 595.

The trial court is vested with a large discretion in determining what is for the children's best welfare and to whom the custody of the children shall be awarded. 17 Am. Jur., Divorce and Separation, p. 513, sec. 675, 27 C. J. S., Divorce, p. 1176, sec. 310. In reviewing custody cases, this

court relies heavily upon the determination by the trial court. Except where there is a clear abuse of discretion the court's order should prevail. *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878.

The plaintiff maintains that the trial court failed to make a specific finding to the effect that the welfare of the children would be promoted by the change, or that the benefit of the children required the change as contemplated in secs. 247.24 and 247.25, Stats. The court found both parties to be fit and proper persons to have the care and custody of the children. In its findings of fact the court analyzed items that appertained to welfare. It thereby clearly implied that the change was for the welfare of the children. That a finding of best interests and welfare may be implied from the action of the court was held in *Hamachek v. Hamachek, supra.*

Each of the parties submitted cogent reasons as to why placement of the custody with them respectively would be for the children's welfare. It appears that the learned trial court conscientiously weighed the many considerations involved. On this appeal the plaintiff maintains that custody ought to have been awarded to him principally for reasons that it had been found that he was a satisfactory guardian; that there is no intention on his part to alter the arrangements which have existed since he obtained custody; that the children have expressed a preference to remain with him; that it is not for the interest of the children that their situation be uprooted; that the mother has attempted to alienate the children from him; that the court's judgment would result in taking the children out of the country; that his occupation is such that he can devote all of his time to the children; that financial considerations favor an award of custody to him; that the children are not of tender years.

On the other hand, the defendant points out that when the Canadian court awarded custody to the father he was living in Texas with his mother and that the mother is now de-

ceased; that he has established a residence for himself and the children in quarters connected with a public resort; that it has been found that the defendant's home and surroundings are now satisfactory for the raising of children; that she has been declared a fit and proper person to have the custody; that the children are of tender age; that the children expressed a desire to be with their father for the reason that they expect more gifts from the father than from the mother; that it is the established rule in this state that the custody of the children of tender age will ordinarily be awarded to the mother, she not being unfit; that the father's greater financial position is not a factor to be considered as controlling; that the removal of the children from the country will in nowise impair their welfare; that there have been substantial changes with respect to the circumstances of the parties since the Canadian court rendered its determination.

From this great maze of conflicting considerations the trial court made findings, determined that the children's custody be awarded to the mother, and implied that such placement is for the children's best interests and welfare. It cannot be held that such determination is clearly against the weight of the evidence. No abuse of discretion is manifest. The principle laid down in *Adams v. Adams* (1922), 178 Wis. 522, 190 N. W. 359, applies here. At page 525 of that case the court said:

"As has been repeatedly held by this court, the matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much better position to determine where the best interests of the child lie than is an appellate court."

The trial court did not err in denying the plaintiff's motion for a nonsuit. The findings of fact, conclusions of law, and judgment are not contrary to law.

It cannot be held as a matter of law that children of the ages of nine and eight years, respectively, are not of tender age. As was said in *Russell v. Russell* (1912), 20 Cal. App. 457, 461, 129 Pac. 467, 468:

"There cannot be any fixed and certain age of minority which, in all cases and for all purposes, can be said to constitute a child of 'tender years.' "

Whether or not a child is of tender years depends not alone upon its age, but also upon its physical and mental development. It is a proper consideration of fact in each case for the court to determine.

2 Nelson, Divorce and Annulment (2d ed.), Custody of Children, p. 175, sec. 1509, points out that:

"It is universally recognized that the mother is the natural custodian of her young. In legal contests for the custody of minor children, the law favors the mother. If she is a fit and proper person to have the custody of her children, other things being equal, the mother should be given their custody, in order that the children may not only receive her attention, care, supervision, and kindly advice, but also may have the advantage and benefit of a mother's love and devotion for which there is no substitute."

In *Templeton v. Templeton* (1948), 254 Wis. 92, 35 N. W. (2d) 223, the father maintained that the best interests of a nine-year-old daughter demanded that the custody be not continued in the mother who had remarried but had lived with her present husband as man and wife before a year had elapsed from the date of a previous divorce and before they could be legally married. This court sustained the trial court's determination that it was for the best interests of the child to be in the custody of the mother.

The wishes of a child who is sufficiently mature to be able to formulate and express a rational opinion and desire as to its custody, may be considered by the court in determining

custody. However, the child's desire is never conclusive upon the court. 39 Am. Jur., Parent and Child, pp. 609, 610, sec. 21.

The financial condition of the parents may and should be considered, but it is not controlling. The mere fact that the financial status of one parent is better than that of the other is not alone sufficient to justify an award of custody. 27 C. J. S., Divorce, p. 1175, sec. 309 (f).

The court may consider the prospective home surroundings of the children, the character of persons who would associate with them, and the children's opportunities for education and moral training. 27 C. J. S., Divorce, p. 1173, sec. 309 (d).

The fact that the children are to be removed to another country, while to be considered, is not controlling. Nonresidence is generally regarded as a factor of minor importance. 39 Am. Jur., Parent and Child, p. 612, sec. 22.

Although this proceeding is based on a warrant in lieu of *habeas corpus,* the principles, which pertain to *habeas corpus* when that procedure is used as a means for inquiring into and determining the rights of conflicting claimants to the care and custody of minor children, are applicable. The proceedings are equitable in their nature. In *Bellmore v. McLeod* (1926), 189 Wis. 431, 433, 207 N. W. 699, the court said:

"The ascertainment and enforcement of the custody of minor children by the use of the writ of *habeas corpus* is equitable in its nature, . . . The court, when asked to restore an infant, is not bound by any more legal right of parent or guardian, but is to give it due weight as a claim founded on human nature, and generally equitable and just. The court is in no case bound to deliver a child into the custody of any claimant, but should, in the exercise of a sound judicial discretion after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require. 12 Ruling Case Law, 1214–1216." See also 25 Am. Jur., Habeas Corpus, pp. 204, 205, sec. 80.

We find no error with respect to the court's application of the legal principles involved under the issues here. The findings are not contrary to the great weight and clear preponderance of the evidence. It does not appear that there has been an abuse of discretion.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J. (*dissenting*). The welfare of the child is, of course, the prime consideration of a court in granting or changing the custody of any child. *Hamachek v. Hamachek,* ante, p. 194, 70 N. W. (2d) 595. Sec. 247.24 of the Wisconsin statutes confers upon the court the power to change the care and custody of a child only "whenever the welfare of any such child will be promoted thereby;" and sec. 247.25 says that, after a judgment of divorce and awarding custody has been made, the court from time to time at any time thereafter may make such new judgment concerning custody as "the benefit of the children shall require."

The decision of the trial court, and the decision in the majority opinion here, is based on the reasoning that since the Winnipeg juvenile and family court found the father a fit person for having custody of the children and made no specific finding as to the mother's fitness, it, in effect, found the mother an unfit person; that circumstances have changed since the time of the trial in the Canadian court, with the result that the mother can now be found to be a fit person; and that the importance of the natural love and affection of a mother demands that the children should now be placed in her custody.

In awarding custody of the children to their father, judge HEANEY of the Winnipeg juvenile and family court based his decision on:

"1. The paramount interests of the children.

"2. The relatively more stable financial situation of the father.

"3. The sincere interest of the father in the children.

"4. The relatively greater interest of the natural father as compared to the stepfather plus the likelihood that the stepfather would have his own children.

"5. The court's doubts as to the veracity of the mother:

"(a) As to the furnishing of a home for her by the father.

"(b) As to her claim that the father denied her medical attention.

"(c) As to her explanation of a 'secret' marriage to Mr. Eisler.

"(d) As to the purchase and consumption of liquor by members of her household.

"6. That there was too much liquor purchased by members of the mother's household.

"7. The court's satisfaction as to the honesty and trustworthiness of the testimony of the father."

The only one of the above items which can truly be said to have changed since the decision of Judge HEANEY is No. 4. It has been established that because of her illness Mrs. Eisler can no longer bear children.

The only testimony Mrs. Eisler was able to give with respect to liquor in the home was that it had "far decreased . . . *because a number of the people living there have removed.*" Mr. Eisler testified that the drinking done by both himself and his wife is about the same as it was in August, 1953 (the date of the judgment granted by Judge HEANEY). Margaret Campbell (a sister of Mrs. Eisler) testified that the drinking habits of the Eislers have not changed.

The fact that the Eislers have moved from one home, heavily mortgaged, to a comparable but slightly less desirable home, also heavily mortgaged, in another district, is not a substantial change in circumstances such as to justify a change in custody. The fact that Mrs. Eisler's sisters moved from her house and that the Eislers thereafter lived alone was known to Judge HEANEY at the time of trial and is not

a change which has taken place since the judgment of August, 1953.

The facts with respect to Mrs. Eisler's "secret marriage" and her marriage made public on May 16, 1953, were the same at the time of the Canadian trial and at the time of the trial in the Wisconsin lower court. The Canadian court was aware of both marriages at the time of granting judgment.

There has been no change in the veracity of Mrs. Eisler. The record contains numerous instances of sworn statements by Mrs. Eisler which are in conflict with statements of non-partisan witnesses as well as contrary to other statements made at both trials. The Wisconsin circuit court has indicated its own distrust of Mrs. Eisler in the judgment granted by it, for that judgment specifies that the support payments to be made by Mr. Hannon be made only to the clerk of the court, and that they cannot be collected by Mrs. Eisler unless and until she returns the children to the custody of their father in June of each year.

There has been no change on the part of the father which would nullify the opinion of Judge HEANEY as to the sincere interest of the father in the children, as to the honesty and trustworthiness of his testimony, and as to his relatively more stable financial situation. The Wisconsin trial court found: "That Mr. Hannon has been a good and kind father and is also a fit and proper person to exercise the care and custody of these children. I find that the home in which he has had the children, both at Lakewoods and also at the Hendrickson home—both homes have been fine for the raising of those children, they have been happy, contented, and well cared for."

I see no new circumstances which have arisen since the judgment of the Winnipeg court and on account of which a change of custody would be required or justified for the welfare of the children. They are happy and contented, well

provided for, and adjusted to their present living arrangements. Their father is admittedly a proper and fit person to have them in custody and his fitness has never been in question. Another uprooting would only be a hardship for the children. The Winnipeg court found that it was for the welfare of the children that they be placed in their father's care. In *Hill v. Hill,* 257 Wis. 388, 391, 43 N. W. (2d) 455, the rule is stated that "In matters relating to custody, . . . in the absence of a substantial change in the premises on which the original determination was made, a modification or revision is an abuse of discretion." The trial in the Canadian court spread out over three months, and that court had before it much evidence not before the Wisconsin trial court. The matter was fully litigated in a court of competent jurisdiction. There has been no substantial change of facts, and the Wisconsin trial court cannot substitute its opinion for that of a court of competent jurisdiction merely on the grounds that the custody of children of tender years is ordinarily awarded to the mother. As said in *Hamachek v. Hamachek, supra* (p. 201), "The influence capable of inspiring wholesome ideals and purposes in a growing child is not completely encompassed in the relationship of mother and child," and "the importance of the natural love and affection of a mother may be outweighed by other elements." I am convinced the order transferring custody should be reversed.

I am authorized to state that Mr. Justice CURRIE concurs in this dissent.