GOEMBEL, Appellant, v. GOEMBEL, Respondent.

*No. 556. Argued June 6, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 416.)

For the appellant there was a brief by *Conway & Conway* of Baraboo, attorneys, and *Georgia A. Felger* of Milwaukee, of counsel, and oral argument by *Vaughn S. Conway* and *Ms. Felger*.

For the respondent there was a brief by *Stevens & LaRowe* of Reedsburg, and oral argument by *Kenneth S. Stevens*.

HANLEY, J. Two issues are raised on appeal.

1. Was there sufficient change of circumstances with regard to the conduct of the plaintiff or the welfare of the child to justify a change of custody; and

2. Is there sufficient evidence in the record to support a finding that the best interests of the child require a change in custody?

*Sufficient change in circumstances.*

The plaintiff's first challenge to the change of custody is that the trial court misapplied the law. Her contention is premised upon the fact that all facts concerning her alleged misconduct were specifically brought out at prior hearings and these same facts were used by the trial court at the time custody was transferred to justify that action.

The general rule of "change of circumstances" was stated in *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 475, 476, 71 N. W. 2d 376:

"Questions of custody of children are always open to revision by the court upon change of circumstances requiring or justifying change, upon application of either party. *Lerner v. Lerner* (1948), 252 Wis. 87, 31 N. W. (2d) 208. However, it is the rule in this state that a substantial change in circumstances must be established in order to warrant a change in the custody of children. In *Hill v. Hill* (1950), 257 Wis. 388, 391, 43 N. W. (2d) 455, it was said:

" 'It has been repeatedly held by this court that a judgment in a divorce suit does not prevent the court from afterward modifying a judgment under sec. 247.24, Stats., if the circumstances of the parties have so changed as to render such modification just and equitable. In matters relating to custody, however, this court has held that in the absence of a substantial change in the premises on which the original determination was made, a modification or revision is an abuse of discretion. *Smith v. Smith* (1932), 209 Wis. 605, 609, 610, 245 N. W. 644; *Application of Rattel* (1943), 244 Wis. 261, 265, 266, 12 N. W. (2d) 135; *Romanowski v. Romanowski* (1944), 245 Wis. 199, 203, 204, 14 N. W. (2d) 23.' "

Most recently, in the case of *Freye v. Freye* (1972), 56 Wis. 2d 193, 196, 201 N. W. 2d 504, this court stated:

"Despite the fact that a determination of custody or of fitness is never irrevocably final, once a full inquiry has been made into these considerations, the court '. . . ought not again consider it *until there was such a substantial or material change in the circumstances of the*

*parents or of the child* as would require or justify in the interest of the child a modification of the previous determination. . . .' *King v. King* (1964), 25 Wis. 2d 550, 554, 131 N. W. 2d 357." (Emphasis added.)

At both the original divorce hearing and the hearing on the order to show cause for changing custody, the plaintiff was found to be a fit mother for Robb. Therefore, the change of circumstances, if any, must relate to the best interests of the child.

At the time of the hearing held January 29, 1971, on the divorce, the plaintiff was thirty-four years of age and a waitress at a restaurant on predominantly the 4 to 12 p. m. or 3 to 11 p. m. shift. She testified that she and her children (one from a prior marriage) had made several trips to Canada and that on one of the trips her "money manager," Norbert Miller, accompanied the group. The testimony disclosed that she had a recent inheritance and was thinking of investing it in a Canadian restaurant.

Since the time of her separation from the defendant in July, 1970, she has dated other men. She testified that she had dated Martin Brock, Jr., a truck driver, seven or eight times. Brock testified that he stops at the plaintiff's house on his way through town and had done so from seven to eight times; usually staying from 12 a. m. until 2:30 or 3 a. m. Brock also testified that he and the plaintiff had been to a bar on one occasion and that while there, her children, including Robb, had stayed in the car for about fifteen or twenty minutes. He unequivocally stated that he had never had sexual relations with plaintiff and the defendant introduced no evidence to the contrary.

The defendant testified that on one evening in June of 1970, his wife arrived home at about 4 a. m. and when asked about the delay, told him that there had been an accident. He stated that he later checked with the

police and found that there was no accident anywhere in the county on that evening. After their separation, the defendant testified that he moved in with his mother in a house about 100 yards away from his house which the plaintiff, at that time, still occupied. He stated that he observed her coming home at about 3:10 a. m. and that she had her children with her.

There is no evidence that at anytime the child was not properly provided for. He was properly fed and clothed, kept neat and clean and never left without a baby sitter—often times the plaintiff's teenage daughter. The defendant admitted his wife was "sometimes" a good mother.

At the close of the divorce hearing, the court admonished the plaintiff for sitting in a bar while her children were left to wait in the car.

"I am not saying this makes you an unfit parent. I am saying, however, that under no circumstances should this occur again. The court also takes a somewhat dim view of your entertaining gentlemen in your home from 12 to 2:30 in the morning. Given the hours that you are working and probably the hours that the gentlemen are working, it is not as serious as it would appear on the surface, but certainly—certainly—this is bound to have an adverse effect on your children."

As to the reasons for awarding custody to plaintiff, the court stated:

"Certainly Mr. Goembel, together with his mother, could provide for this boy. On the other hand, the court does feel and does concur with the recommendation of the guardian *ad litem* that it would seem that the mother could best care for this child at this age of three years, so the court is going to award custody of the child to the plaintiff."

At the hearing, on August 18, 1972, on the issue of harassment by private detectives, plaintiff testified that she was a part owner of a tractor-trailer which is avail-

able for rent, and that her partner in the trailer is Melvin Bird. She testified that she sees Bird every ten days or two weeks and that his stops at her home vary from one-half hour to three days, with him sleeping there about once every other month. She also testified that another truck driver by the name of Dennis Hartwig who was a friend of Bird's slept there for a few hours, leaving at about 5 a. m.

On one occasion during the month in the summer when Robb was at the defendant's home exclusively, she went with Bird on a long trip with the truck and they took turns sleeping and driving. She has also made several much shorter "overnight" trips in which either a neighbor or her teenage daughter baby-sits for Robb.

At the close of the hearing, plaintiff's counsel moved for an adjournment so that a brief in support of his request for the turning over of the private investigator's reports could be filed. Defense counsel stated only that "I have no objection to the adjournment, so far as resolving the problem of the reports and . . . I think when the hearing is resumed, we'd like to take up the issue of the question of custody of the child."

On October 4, 1972, the hearing was had on the issue of plaintiff's unlisted telephone number. The issue was apparently resolved when the parties agreed to set up an exact time schedule for defendant's visitation periods.

The order amending judgment prepared by defense counsel and signed by the court provided:

"That paragraph 1 of the judgment of divorce entered into between the parties hereto be amended to provide that *until further order of the court the care, custody, and control of the minor child of the said parties shall be awarded to the plaintiff subject to the right of the said defendant to visitation rights with said child as follows: . . .*" (Emphasis added.)

That part of the order italicized represents virtually the same language initially used in the original judg-

ment. The only difference is in the schedule for visitation which followed. The order was signed on the 16th day of October, 1972.

On November 8, 1972, hearing was had on the issue of change of custody.

Plaintiff testified that she had known Melvin Bird for two years and that he occasionally stops at her house. She also testified that she knew both a James Pennington and a Warner Weisner and that although Pennington had stayed overnight at her house, Weisner never had.

Pennington was then called as a witness. He stated that he was a truck driver and that he used to come through the Wisconsin Dells area and that he met the plaintiff at the Oasis Restaurant where she worked. He testified that on one occasion he stayed all night at plaintiff's house along with five other people. It later was testified to that this was a very cold winter evening and no one's car would start. He also testified that he had been to plaintiff's home several times for dinner and that one or two times he was there past midnight. He stated that he has slept in his truck parked in her yard. He, too, stated that he and the plaintiff never engaged in any type of sexual activity together.

Melvin Bird testified that under his business arrangement with plaintiff, she bought out his father's interest in the tractor for $4,000. She takes care of the books, does his laundry, provides him with a place to service his truck and a place to stop off at. In exchange for this, he makes her mortgage payments on the house.

James H. Martin, a private investigator retained by defendant, testified to numerous surveillances he conducted of plaintiff's house. On July 30, 1971, Bird arrived at about 9:55 p. m. and at about midnight, all lights in the residence were turned out. Bird, according to Martin, had not left the house at 6 a. m. when his surveillance ended. On January 25, 1972, Martin testi-

fied that the plaintiff, at about 11:50 p. m. picked up Pennington at the Oasis and brought him back to her house where he stayed at least to 7:10 when the surveillance ended. It was later testified to by Anna Merrill, a neighbor of plaintiff's, that Pennington and Bird are good friends and that she has been present on occasion when Pennington stops to see when Bird will be coming through.

Martin further testified that on February 22d at about 7:30 p. m. Bird pulled into the plaintiff's yard with his tractor unit and as soon as he was inside the doorway, Bird was seen by Martin kissing and embracing plaintiff in the presence of Robb.

The plaintiff testified that her boyfriend is Warner Weisner and she further testified that she never had sexual relations with him in her house, or for that matter, with any other man in her house.

The record is devoid of any acts of neglect by the plaintiff toward Robb, either physical or otherwise, and all witnesses concurred that Robb was well cared for by the plaintiff.

The plaintiff's first contention is that in order to substantiate a transfer of custody, the trial court was required to find that the circumstances had changed between October 4th, the date of the hearing on defendant's order to show cause to require production of plaintiff's unlisted telephone number, and November 8th, the date when the hearing on the order to show cause for change of custody was held.

The only result of the October 4th hearing was that the parties agreed on a more precise schedule of visitation privileges so as to eliminate any confusion which resulted from plaintiff's obtaining an unlisted telephone number. Similarly, the only amendment to the original judgment related to visitation and not custody. The court heard no testimony relating to either a change in the fitness of the plaintiff or the circumstances of the

child though, as its opinion reflects, by its referral to the November 8th hearing, such issues were pending before the court. Therefore, the court on November 8th was justified in receiving testimony on facts which occurred between then and January of 1971, when the original judgment was entered. Plaintiff next contends that even if it was proper for the court to consider the entire period between January of 1971, and November of 1972, the trial court still erred, since there was no evidence presented which showed a change of circumstances substantial enough to order a transfer of custody.

We agree with this contention. The facts presented at the hearing on November 8th were substantially the same set of facts presented at the divorce trial. Although plaintiff's business association with Bird was not as thoroughly brought out at the trial as it was at the November hearing, it cannot be said that her general conduct was any more improper than her conduct as originally detailed. Though the testimony of the private investigator discloses that Bird spent the night at plaintiff's home, the most distinguishing fact disclosed at the trial was that on one occasion the detective saw the plaintiff and Bird "kiss" and "embrace." Further evidence that the circumstances had not materially changed is found in the trial court's own decision that the plaintiff was still fit to have custody of the child. It stated:

". . . it is obvious that both the father and the mother can and will provide adequately for the child's physical needs. On the basis of the record presented, the court cannot and does not find that either of the parents is unfit to have the custody of the minor child of the parties."

Since there was no substantial change of circumstances with respect to the "fitness" of the plaintiff, then the only rationale that the court could use for

transfer of custody would be that the evidence which was produced proved a change of circumstances with regard to the best interest of the child. The trial court placed principal reliance on the change in the child's age.

"The court does, however, considering the totality of the circumstances, feel that the best interests of the child would be promoted at this time by awarding custody to the father. The court is in no way seeking to punish the mother for her course of conduct. On the other hand, since the original divorce was heard this young boy is now two years older. He is shortly going to enter school. The court cannot conceive that it would or will be at this time in this child's best interests to be subjected further to the life style that Mrs. Goembel has chosen to select. It may be that there is nothing immoral in the manner in which Mrs. Goembel lives. On the other hand, the court cannot conceive that her life style can possibly add any element of stability to this young boy's future upbringing. What would go unnoticed by a three-year old becomes readily apparent to a five-year old."

While a child's age is, of course, a very relevant consideration in determining where his "best interests" lie, there is absolutely no evidence that such a change has had any demonstrable effect on Robb Alan. On the contrary, the record shows that he was at all times properly clothed, fed and cared for, and that plaintiff was a good mother.

The importance of showing adverse effects has been emphasized by this court on several occasions. In *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 151, 138 N. W. 2d 185, the trial court found both parents "fit" and found that it would be in the best interests of the children to remain with the mother in spite of the fact that she had in the past been found guilty of immoral conduct. The court stated:

"The crucial question is whether in every case where a woman has been found guilty of immoral conduct,

does this, *without any evidence of demonstrable effect of such conduct on the children, mean that she is necessarily 'unfit' to have custody of the children and that an award of the custody to her cannot be 'in the best interests of the children.'* " (Emphasis added.)

In *Larson v. Larson* (1966), 30 Wis. 2d 291, 140 N. W. 2d 230, the trial court found a mother unfit and granted custody to the father. Besides the alleged acts of misconduct with other men, the record demonstrated that ". . . the care of her child was indifferent and inadequate." Affirming the trial court, we distinguished this case from *Wendland,* p. 302:

"The basic distinction between the two cases is that in *Wendland* the trial court found the mother fit and awarded custody to her while in the instant case the trial court found the mother unfit and took custody from her. The facts set forth above amply support the trial court's determination that the care of her child was deficient and contains a recitation of the details of the mother's continued acts of moral indiscretion. *By contrast, in Wendland there was no evidence of any adverse effect on the Wendland children of the mother's indiscretions and further there was no evidence of any failure on the part of the mother to give her children completely satisfactory care.*" (Emphasis added.)

In the absence of a showing that plaintiff's conduct has had any adverse effect on the child, the mere fact that the child is now two years older than at the time of the divorce hearing is not a material change with regard to the best interest of the child.

Plaintiff contends that the trial court's decision to transfer custody because it was in the best interests of the child to do so was not based on the evidence and the court abused its discretion.

The trial court in its memorandum decision stated:

"The court does, however, considering the totality of the circumstances, feel that the best interests of the

child would be promoted at this time by awarding custody to the father."

The above portion of the court's decision was not based on any proof but was based on the trial judge's feelings.

In order to show a change of circumstances which would justify a custody change based on the best interest of the child, facts must be produced to prove that the welfare of the child would be promoted by the change. The burden is on the party seeking custody to prove that the best interest of the child will be promoted by a change of custody. *Dees v. Dees* (1969), 41 Wis. 2d 435, 164 N. W. 2d 282.

The record in this case is silent as to facts which prove that plaintiff's conduct has any adverse effect on the child, nor that the child's best interest would be promoted by a change.

We conclude that under the facts of this case, there was no substantial or material change of circumstance with regard to the fitness of the mother or the welfare of the child which would justify a court order transferring custody. The trial court failed to properly apply the change of circumstance test and abused its discretion in transferring custody to the defendant father.

*By the Court.*—Order reversed.