IN RE the MARRIAGE OF:
Steven G. GOULD, Plaintiff-Respondent,†

v.

Linda A. GOULD, Defendant-Appellant-Petitioner.

Supreme Court

*No. 82–950. Argued January 3, 1984.—Decided January 31, 1984.*

(Also reported in 342 N.W.2d 426.)

† Motion for reconsideration dismissed March 1, 1984.

494

For the defendant-appellant-petitioner there was a brief by *Donald J. Wall, Legal Services of Northeastern Wisconsin, Inc.,* Green Bay, and oral argument by *Mr. Wall.*

For the plaintiff-respondent there was a brief, in court of appeals, by *Owen F. Monfils,* Green Bay, and oral argument by *Mr. Monfils.*

A joint amicus curiae brief was filed by *Lucy Cooper, Sandra Edhlund, Family Law Center* and *Edhlund,*

*Rachofsky & Cooper, S.C.*, Milwaukee, and *Judy Avner, Marsha Levick* and *NOW Legal Defense and Education Fund*, New York, New York, for the Wisconsin National Organization for Women, NOW Legal Defense and Education Fund and Women's Legal Defense Fund.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed March 22, 1983, affirming a judgment of the circuit court for Brown county, John C. Jaekels, Circuit Judge, transferring custody of the child Kimberly Gould from Linda Gould to Steven Gould. Because we conclude that the circuit court abused its discretion in ordering custody transferred, we reverse the decision of the court of appeals and the judgment of the circuit court transferring custody.

This review stems from the divorce of Linda Gould and Steven Gould. The divorce judgment dated March 28, 1977, incorporated a stipulation that Linda Gould have custody of the parties' only child, Kimberly Ruth Gould, born March 4, 1974.

On May 15, 1981, Steven Gould petitioned the circuit court to transfer custody of Kimberly to him. The circuit court ordered a psychiatric evaluation of the child and of each parent's fitness as a custodian and a "moral-social" study of each of the home environments to be conducted by a social worker from the Brown County Family Services Association. The circuit court appointed a guardian ad litem for Kimberly.

The psychiatrist recommended that Kimberly be allowed to remain with her mother. The social worker did not make a recommendation as to which parent should have custody, but she did state her opinions about the relative merits of the two home environments. Kimberly expressed a strong preference to remain with her mother. Kimberly's guardian ad litem recommended that custody be transferred to Steven Gould on the basis of the con-

cern expressed by the social worker that Kimberly, then seven years old, would be adversely affected in adolescence by her mother's lifestyle. However, the guardian ad litem conceded that his opinion was based on speculation.

The circuit court found that both parents were loving, concerned, and fit custodians and that Kimberly loved them both. It concluded that Kimberly was happy and well adjusted in her home and her school environments.

The circuit court also found that Steven Gould's lifestyle was "traditional" and Linda Gould's was "nontraditional."

Steven Gould had remarried and was helping to raise his two stepchildren. The circuit court recognized that there may be some "sibling type friction" between Kimberly and the two stepchildren but it did not view the friction as unusual or very significant.

Linda Gould was a fulltime homemaker and was not married to the man with whom she had been living for several years.

Steven Gould was college-educated and earned $29,000 a year. In the circuit court's words, he was an "achiever" who provided a "more affluent and socially stimulating" environment than did Linda Gould, an unemployed high school graduate and a "nonachiever" (according to the circuit court) receiving AFDC after her maintenance payments ceased.

Steven Gould and his second wife took their children to church regularly. Linda Gould did not provide a formal religious environment for Kimberly. The circuit court stated that "religion and its discipline [are] important, particularly for a child."

The circuit court found that although Kimberly related well to her mother and her mother's living companion and that there was no demonstrable evidence that the extramarital relationship "had any ill effect" on Kim-

berly at that time, her mother's living situation would "most likely be harmful" when Kimberly reached preadolescence. This conclusion appears to have been based on the opinion of the social worker that Kimberly would be subjected to a double message at adolescence: Linda Gould would presumably be trying to teach Kimberly society's moral values while living with a man outside of marriage.

Allowing that "this is a difficult case to decide," the circuit court transferred custody of Kimberly to her father. It compared the mother's and father's lifestyles as follows:

"On one side there is no substantial evidence that there is any present harm to the child as a result of the current custody order. The child is happy and doing well at school. The mother's living arrangement . . . has not caused any harm to the child to date. On the other side, the physical, moral, spiritual, social, and educational environment and opportunities with the father would be far better in the long run, and the child would certainly benefit. The problem with transferring custody always involves the chance of a separation trauma. There is no evidence that Linda [Gould]'s values will change. The question posed is whether the chance of a separation trauma is worth the gamble of transferring custody so that the long range interest of the child would be better served. I believe it is. . . . The Court is of the opinion that custody with the father will enhance the child's well-being."

An appellate court must give great weight to the circuit court's determination as to custody. A custody determination depends on first-hand observation and experience with the persons involved and is therefore committed to the sound discretion of the circuit court. The circuit court's determination merits a high degree of insulation from appellate interference. Discretionary determinations, however, do not lie beyond meaningful appellate scrutiny. Friendly, *Indiscretion About Discre-*

*tion,* 31 Emory L.J. 747 (1982). The custody determination will be reversed if the appellate court is convinced that the findings of fact upon which the custody determination is based are clearly erroneous, sec. 805.17(2), Stats. 1981–82, or that the custody determination represents a clear abuse of discretion. To find an abuse of discretion the appellate court must find that the circuit court either has not exercised discretion or has exercised its discretion on the basis of an error of law or irrelevant or impermissible factors. *Groh v. Groh,* 110 Wis. 2d 117, 128, 327 N.W.2d 655 (1983); *Millikin v. Millikin,* 115 Wis. 2d 16, 25, 339 N.W.2d 573 (1983).

We asked the parties to address in their briefs and arguments the following issue: "In addition to the alleged use of wealth-based criteria, was the circuit court's decision against the great weight and clear preponderance of the evidence or an abuse of discretion in any other respect?" We conclude that the circuit court based the exercise of its discretion in this case on an error of law and considered a factor that is impermissible in a determination of custody. Accordingly we hold there was an abuse of discretion and reverse the judgment transferring custody.

The circuit court erred in making its decision to transfer custody by failing to apply the test embodied in sec. 767.32(2). The circuit court failed to recognize that in proceedings to transfer custody, sec. 767.32(2) puts the burden on the moving party to bring forth substantial evidence showing that removal of the child is *necessary* to the child's best interest. Sec. 767.32(2), Stats. 1981–82, which governs change of custody proceedings, provides:

"Any modification of a custody order which removes a child from the care of a parent having custody of the child shall be based on a finding that such removal is

*necessary* to the child's best interest *as shown by substantial evidence supporting a change in custody* under s. 767.24(2)." (Emphasis added.) [1]

This statute makes clear that the standard for a modification of a custody order is not the same as that for an initial award of custody. While certain evidence might be sufficient to support an initial award of custody to one party on a best interest of the child analysis, it may not be sufficient to support a modification of a custody order where a showing of necessity must be made under sec. 767.32(2).

This court recently interpreted the language of sec. 767.32(2) requiring that a change of custody be "necessary." *Millikin v. Millikin,* 115 Wis. 2d 16, 23–24, 339 N.W.2d 573 (1983). We said that the legislative history indicated that by requiring a showing that change of custody be "necessary" the legislature meant to impose

[1] Sec. 767.24(2), Stats. 1981–82, provides:

"(2) In making a custody determination, the court shall consider all facts in the best interest of the child and shall not prefer one potential custodian over the other on the basis of the sex of the custodian. The court shall consider reports of appropriate professionals where admitted into evidence when custody is contested. The court shall consider the following factors in making its determination:

(a) The wishes of the child's parent or parents as to custody;

(am) The wishes of the child as to his or her custody;

(b) The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest;

(c) The child's adjustment to the home, school, religion and community;

(d) The mental and physical health of the parties, the minor children and other persons living in a proposed custodial household;

(e) The availability of public or private child care services; and

(f) Such other factors as the court may in each individual case determine to be relevant."

more than a simple showing that the change be in the best interest but less than a showing that the change be "essential." *Millikin, supra,* 115 Wis. 2d at 23; *Corcoran v. Corcoran,* 109 Wis. 2d 36, 40–41, 324 N.W.2d 901 (Ct. App. 1982). Although we recognized in *Millikin* that the word "necessary" could not be defined with precision for purposes of determining a change in custody, we did attempt to set forth guidelines. We said:

" 'necessary' does not mean that the child need be in impending or immediate danger of life, health, or safety. Rather, we view 'necessary' as implying that the change of custody itself is needed because the current custodial conditions are harmful in some way to the best interest of the child. Such harm should not be found, however, simply because the custodial parent cannot match the better general living conditions offered by the parent seeking change of custody. In order for better living conditions to become significant, they must rectify a condition in the current custodial arrangement that is harmful to the child's best interest." *Millikin, supra,* 115 Wis. 2d at 23–24.

The circuit court erred in this case by applying simply a best interest of the child analysis to decide that custody of Kimberly should be transferred to her father. The circuit court made no reference to sec. 767.32(2), and it never found, as required by the statute, that "the current custodial conditions are harmful in some way to the best interest of the child." *Millikin, supra,* 115 Wis. 2d at 23. Indeed the circuit court found that Linda Gould was a loving, concerned, and fit custodian and that Kimberly was happy and well adjusted.

Focusing solely on the best interest of the child as if this were an initial custody proceeding, the circuit court transferred custody because it felt the father's home provided better general living conditions, not because the mother's home was harmful. In *Millikin* we concluded that the current custodial conditions are not harmful

simply because they do not match better general living conditions offered by the parent seeking change of custody. *Id.* at 23–24. Thus the fact that the father in this case seeking a change of custody is more affluent than the custodial parent does not justify a change of custody. While the economic well-being of children of divorced parents must be provided for, it is best achieved by the court's making appropriate child support and maintenance awards and by focusing judicial resources on enforcement of awards and not by considering financial ability as a criterion for custody.[2]

Similarly, it would not be sufficient for the circuit court to conclude that a change of custody is justified by a better social or academic environment in the noncustodial parent's home. As we said in *Millikin,* "In order for better living conditions to become significant, they must rectify a condition in the current custodial arrangement that is harmful to the child's best interest." *Id.* at 24.

The circuit court, again focusing on the best interest of the child as if this were an initial custody proceeding, also apparently transferred custody because it perceived the father's lifestyle as "traditional," not because the mother's "nontraditional" lifestyle or her extramarital relationship were conditions in the current custodial arrangement that were harmful to the child. The circuit court believed that the extramarital relationship might

[2] Basing custody awards on the relative affluence of one of the parents would in effect discriminate against women in violation of the provisions of sec. 767.24(2) that "the court . . . shall not prefer one potential custodian over the other on the basis of the sex of the custodian." Such a consideration will discriminate not only against women who work inside the home full time fulfilling the important, traditional role of homemaker but also against women who work outside the home and generally have less earning power than men. *See* Weitzman, *Economics of Divorce: Social and Economic Consequences of Property, Alimony, and Child Support Awards,* 28 U.C.L.A. L. Rev. 1181 (1981).

be harmful in the future, but this belief is not sufficient to constitute a finding that the change of custody is necessary now. Any harm was speculative and in the future. At the time of the hearing the child was seven and well adjusted at home and school; the harm, if any, might be at pre-adolescence or adolescence. The circuit court characterized its weighing the speculated future harm against the present harm of removing the child from her mother as "a gamble," which apparently the circuit court was willing to impose on the child.

Although intimating that the mother's extramarital relationship might result in future harm to the child, the circuit court stated that it was not relying on that relationship in determining change of custody. The circuit court said it was more concerned with what the mother's extramarital relationship indicated about her moral-social values. The circuit court said:

"And now, under date of March 23, 1982, I receive a letter from [Linda Gould's] attorney telling that [the man] will remove himself from the apartment if that would avoid having the custody changed. The Court is not impressed by this last minute sudden change of heart. If he were to leave, it's possible that she might be entitled to some maintenance, but otherwise not determinative of custody. The relationship between she [*sic*] and [the man] is certainly something the Court considered, but more in the sense of it being indicative of her moral-social values."

Where the circuit court in a transfer of custody determination relies on the extramarital relationship of the custodial parent or on the immorality it infers from that relationship, it must state a connection between the relationship (or immorality) and some harm to the child. As Justice Hanley said in *Goembel v. Goembel,* 60 Wis. 2d 130, 140, 208 N.W.2d 416 (1973), where the custodial

parent engages in illicit relationships, "the importance of showing adverse effects has been emphasized by this court on several occasions." Where a parent is guilty of immoral conduct and there has been no "evidence of demonstrable effect of such conduct on the children," this court has not been willing to say that the parent "is necessarily 'unfit' to have custody of the children and that an award of the custody to [the parent] cannot be 'in the best interests of the children.'" *Wendland v. Wendland,* 29 Wis. 2d 145, 151, 138 N.W.2d 185 (1965). *See also Larson v. Larson,* 30 Wis. 2d 291, 140 N.W.2d 230 (1966); *Goembel, supra,* 60 Wis. 2d at 141. The circuit court did not set forth any connection in this case between the mother's extramarital relationship or her "moral-social values" and any present demonstrable harm to the child's best interest.

For the reasons set forth, we conclude that the circuit court abused its discretion by failing to apply the standard set forth in sec. 767.32(2) for determining a change in custody.

We further conclude that the circuit court based the exercise of its discretion on an impermissible factor.[3] The circuit court abused its discretion in basing its determination to transfer custody on its belief that religious affiliation furnished by Steven Gould would be better for Kimberly than the lack of a religious environment in Linda Gould's home. The legislature provided that among the factors the circuit court shall consider in making a custody determination is "the child's adjustment to home, school, *religion* and community." Sec. 767.24(2)(c), Stats. 1981–82. (Emphasis supplied.) The statute requires the court to consider the child's adjustment to religion; it does not require the court to

---

[3] We discuss this issue since it is possible that another petition to modify custody may be filed at some time in this case.

consider the family's religion or to favor one parent over the other in a custody determination on the basis of the parent's attitudes toward religion or the parent's religious affiliation. Wisconsin has long respected families' rights to choose the type of religious instruction, if any, their children will receive. Wis. Const. art. I, sec. 18;[4] *State ex rel. Weiss v. District Board of School District No. 8 of the City of Edgerton,* 76 Wis. 177, 44 N.W. 967 (1890).

This court has previously considered the weight to be given in a custody determination to the parents' attitudes toward religion. In *Welker v. Welker,* 24 Wis. 2d 570, 575, 129 N.W.2d 134 (1964), we reviewed the following findings of the trial court in a custody proceeding:

"The court is further of the view that a home in which a firm faith in deity is professed, is considered one of its foundations, is preferable to one in which doubt, skepticism or agnoticism [*sic*] is professed."

On appeal this court reversed the trial court's custody order, concluding that "courts should not purport to pass upon the comparative merits of various attitudes regarding religion" and that there was a constitutional "right to disbelieve and also the right to believe in such nontheistic creeds as Buddhism, Taoism, Ethical Culture, and Secular Humanism." *Welker, supra,* 24 Wis. 2d at

---

[4] Art. I, sec. 18, Wis. Const. provides:

"Freedom of worship; liberty of conscience; state religion; public funds. Section 18. The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."

575–76. This court further said that "when custody of a child is in issue, the court has a narrow scope of inquiry regarding the religious concepts of the parents: Does the prospective custodian hold views which might reasonably be considered dangerous to the child's health or morals?" *Id.* at 576.

The circuit court's consideration of the parents' religious affiliations did not comply with either the criteria set forth in sec. 767.24(2)(c) or the scope of inquiry set forth in *Welker.* We therefore conclude that the circuit court abused its discretion in considering an impermissible factor.

Sec. 767.32(2) requires substantial evidence that the change of custody is necessary to the child's best interest. Where the circuit court finds, as it did here, that the custodial parent is loving, concerned, and fit, and there is no circuit court finding that the "current custodial conditions are harmful in some way to the best interest of the child," *Millikin, supra,* 115 Wis. 2d at 23, a modification of the custody order is an abuse of discretion. The circuit court cannot order a transfer of custody just because the noncustodial parent would provide better general living conditions and more traditional lifestyle. We therefore reverse the decision of the court of appeals and the judgment of the circuit court and order that custody of Kimberly be returned to her mother.[5]

---

[5] Two matters concerning relations between counsel for the plaintiff and defendant and between counsel and the trial judge came up tangentially at the trial. We comment on these matters for the guidance of counsel and judges. Our comments, however, should not be interpreted to indicate that this court thinks there was any impropriety on the part of anyone in this case. We take this opportunity to remand counsel that counsel must first submit proposed findings of fact, conclusions of law, and the judgment to opposing counsel and then to the court. Sec. 767.37(1), Stats. 1981–82. We take this opportunity to remind lawyers and judges that *ex parte* oral communications between

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is reversed.

STEINMETZ, J. (concurring in part, dissenting in part). I would send the case back to the trial court for findings that either the change in custody is necessary or not in the best interest of the child, applying the test for custody set by this court in *In re Marriage of Millikin v. Millikin,* 115 Wis. 2d 16, 23–24, 339 N.W.2d 573 (1983). The trial judge did not enunciate that he was applying that test but for good reason. *Millikin* was decided in 1983 and this transfer of custody was entered in 1982. The trial judge should have the opportunity to apply this court's recently established test to the record before him.[1]

*Millikin* stated that "necessary" meant "that the change of custody itself is needed because the current custodial conditions are harmful in some way to the best interest of the child." *Id.* at 23. Now this court states: "The circuit court believed that the extramarital relationship might be harmful in the future, but this belief is not sufficient to constitute a finding that the change of custody is necessary now. Any harm was speculative and in the future." (*Supra,* at pp. 501, 502.) This is an extension of *Millikin* that will not allow a change in custody by the trial judge unless the harm has already been done. I do not agree with that position. That would not allow for experts testifying with any relevance that the child is too young now to be harmed presently; however, having reached the age of reason, the child may by her mother's example accept as sociologically and morally a way of life not accepted by a majority of society and therefore be harmed

lawyer and judge should be avoided. SCR 20.34(3)(q) (Code of Professional Responsibility); 60.01(10) (Code of Judicial Ethics) (1983).

[1] This is especially valid since the mother has married between the time of the hearing and when the case reached this court.

in the future. Extramarital affairs may be by some accepted as the thing to do presently; however, it is not within this country's heritage of morality. The harm, if it exists, must be in the future when considering emotional, social and moral attitudes and that is what trial judges must predict with the help of experts in the child-rearing field and social, psychological and psychiatric evaluations and the judge's observation of all the parties. It was wrong of the trial court to label this hard-felt, experienced, informed judgment of the best interest of the child and the harm in the future as "a gamble" and this was inconsistent with the test to be applied. Trial judges find custody matters, whether initial custody awards or changes in custody, as their most difficult and responsible decisions.

A seven year old child may not presently be harmed by her mother's conduct but her entire future life and attitudes are now being formed; the judge should not be bound to wait for harm to be present since that could be only when the child is too old for custody at all. The only harm that can be found presently by the living conditions would be physical harm by the majority's approach.

"Religion" adjustment is a proper factor according to the legislature (sec. 767.24(2)(c), Stats.) to be considered in making a custody determination. It is therefore a permissible factor for consideration. This mother's beliefs or lack of them are consistent with her moral attitude and may in the future be dangerous to the child's health or morals. *See Welker v. Welker,* 24 Wis. 2d 570, 576, 129 N.W.2d 134 (1964).

I concur with that part of the majority's opinion which reverses the court of appeals decision. However, I dissent from that portion of the opinion which returns the custody of the minor to the mother by reversing the trial court. I would remand the case to the trial court for findings consistent with the guidelines of *Millikin.*

508

LOUIS J. CECI, J. (dissenting). I dissent. The fundamental issue presented by this appeal is whether the trial court abused its discretion in transferring custody of the parties' child from the mother to the father. It is my conclusion that the trial court did not abuse its discretion and that this court should affirm the court of appeals decision.

The court of appeals' opinion clearly summarizes the law:

> Under sec. 767.32 (2), Stats., any modification of a custody order that removes a child from the care of a parent having custody of the child, shall be based on a finding that the removal is necessary to the child's best interests as shown by substantial evidence supporting a change in custody under sec. 767.24 (2), Stats. The burden of proof is on the moving party to show that removal is necessary. Substantial evidence is required to warrant a change of custody. *Corcoran v. Corcoran,* 109 Wis. 2d 36, 42–43, 324 N.W.2d 901, 904 (Ct. App. 1982).

The petitioner argued in this court that the trial court failed to apply the "necessary" standard of sec. 767.32, Stats., since the court spoke in terms of merely "enhancing" Kimberly's well-being and did not mention the specific language of sec. 767.32 (2). While it is true that the court below never mentioned sec. 767.32 (2) specifically, the court did expressly note that "the target is the best interest of the child" and that the court "must consider the guidelines of sec. 767.24." [1]

The majority overstates the meaning of "necessary" as used in the statute and, therefore, implies that a change

[1] Section 767.32 (2), Stats., provides in part: ". . . Any modification of a custody order which removes a child from the care of a parent having custody of the child shall be based on a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change in custody under s. 767.24 (2)."

of custody is "necessary" to a child's best interests only when there is substantial evidence that there is *present* harm to the child. A child's best interests may be far better served by living with one parent even if living with the other would not actually *harm* the child.[2]

There was no substantial evidence that living with the mother caused Kimberly any *present harm* and that she was happy and doing well in school; nevertheless, the "physical, moral, spiritual, social, and educational environment and opportunities with the father would be *far better* in the long run and the child *would certainly benefit. . . .*" (Emphasis added.) This satisfies the sec. 767.32(2) requirement that the court's decision be based on a finding that the change is necessary to the child's best interest. Thus, the trial court did not abuse its discretion or base its decision on an erroneous rule of law.

As was aptly stated by the court of appeals:

> The decision of the circuit court in custody matters is given great weight upon review. A custody decision is a matter peculiarly within the jurisdiction of the circuit court, which has seen the parties, had an opportunity to observe their conduct and is in a better position to determine where the best interests of the child lie than is an appellate court. The circuit court's decision will be upset only if it is against the great weight and clear preponderance of the evidence, or represents a clear abuse of discretion, or is based on an erroneous rule of law. [*Corcoran*

---

[2] It is worth noting, as did the court of appeals in *Corcoran*, 109 Wis. 2d at 41–42, that the legislative history of sec. 247.24(2), Stats. (now sec. 767.24(2)), reveals that while the legislature was deliberating on the amendment to (2), it considered and rejected an express presumption that the child's best interests were served by no change in custody; it lowered the standard for determining whether custody should be changed from "essential" to "necessary" to the child's best interest; and it moved from requiring "compelling countervailing factors" before a change of custody would be allowed to simply "substantial evidence" supporting the change.

*v. Corcoran,* 109 Wis. 2d] at 43–44, 324 N.W.2d at 904–905.

The trial court did not abuse its discretion in transferring custody of the parties' child from the mother to the father, and, therefore, I would affirm.

