# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

| | |
|---|---|
| Case No.: | 2020AP1006 |

Complete Title of Case:

IN RE THE MARRIAGE OF:

JULIE C. VALADEZ,

    PETITIONER-APPELLANT,

      V.

RICARDO VALADEZ,

    RESPONDENT-RESPONDENT.

| | |
|---|---|
| Opinion Filed: | December 29, 2021 |
| Submitted on Briefs: | October 14, 2021 |

| | |
|---|---|
| JUDGES:<br>    Concurred:<br>    Dissented: | Gundrum, P.J., Neubauer and Grogan, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Malinda J. Eskra* of *Reinhart Boerner Van Deuren s.c.*, Milwaukee, *Jay C. Johnson* (admitted pro hac vice) of *Venable LLP*, Washington, D.C., and *Elizabeth Vogel* (admitted pro hac vice) *and Alexandra Drobnick* (admitted pro hac vice) of *DV LEAP*, Washington, D.C. |
| Respondent and<br>Guardian ad Litem<br>ATTORNEYS: | On behalf of the respondent-respondent, the cause was submitted on the joint brief of *Kurt M. Schuster* of *Schuster Law, S.C.*, Waukesha and on behalf of the Guardian ad Litem, the cause was submitted on the joint brief of *Molly J. Jasmer* of *Grady, Hayes & Neary, LLC*, Waukesha. |

COURT OF APPEALS
DECISION
DATED AND FILED

December 29, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP1006**

STATE OF WISCONSIN

Cir. Ct. No. **2018FA296**

**IN COURT OF APPEALS**

---

IN RE THE MARRIAGE OF:

JULIE C. VALADEZ,

   PETITIONER-APPELLANT,

V.

RICARDO VALADEZ,

   RESPONDENT-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Reversed and cause remanded with directions.*

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1    NEUBAUER, J. Julie C. Valadez appeals from a judgment of divorce terminating her marriage to her former husband, Ricardo Valadez. As

relevant to our disposition of this appeal, Julie[1] argues that the circuit court erred in awarding sole legal custody of their children to Ricardo based on its erroneous conclusion that Ricardo overcame the statutory presumption against custody by proving that he received batterer's treatment from a certified treatment program or a certified treatment provider. *See* WIS. STAT. § 767.41(2)(d)1.a. (2019-20).[2] Because of the court's finding that Ricardo engaged in a pattern of domestic abuse against Julie, she similarly takes issue with the court's decision granting the parties shared placement without making the safety of Julie and the children the court's paramount concern, as required by § 767.41(5)(bm). For the reasons stated, we reverse and remand with the directions specified below.

## BACKGROUND

¶2 The following facts were found by the circuit court after a five-day trial. We recite here only the findings that pertain to our analysis on appeal.

¶3 Julie and Ricardo were married in 2004 and had been married for approximately sixteen years at the time of their divorce trial. They have four minor children together, two of whom have been diagnosed with autism.

¶4 In late 2017, Ricardo was arrested and charged with a misdemeanor for domestic abuse against Julie. Julie petitioned for divorce a few months after Ricardo's arrest and subsequently sought a domestic abuse injunction. Ricardo stipulated to the entry of a four-year injunction, which prohibited him from contacting Julie or entering the marital home, where Julie and the kids were living

---

[1] For ease of reading, we use first names to refer to the parties because they share the same surname.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

at the time. After the injunction was issued, the circuit court entered a temporary order which, among other things, gave Julie sole legal custody and primary placement of the children and awarded Ricardo periods of supervised placement.

¶5 At some point after the injunction was issued, Ricardo entered the marital home in contravention of the injunction. After the incident, Julie moved out of the house and enrolled in the Wisconsin Department of Justice's "Safe at Home" program, which offers victims of domestic abuse and other crimes a legal substitute address that can be used for public and private purposes. *See Safe at Home: Wisconsin's Address Confidentiality Program*, WIS. DEP'T OF JUST., https://www.doj.state.wi.us/ocvs/safe-home (last visited Dec. 13, 2021).

¶6 In early 2019, the state agreed to amend Ricardo's misdemeanor domestic abuse charge to disorderly conduct upon payment of restitution and successful completion of alcohol and other drug abuse and domestic abuse treatment. Julie was present at the sentencing hearing and objected to the amendment of the charge because she did not believe that the counseling Ricardo had completed with his licensed professional counselor, Tyler Loomis, was specific to domestic violence. Nonetheless, the court (not the same judge who presided over the injunction and divorce hearings) approved the amended charge, accepted Ricardo's plea of no contest thereto, and sentenced Ricardo accordingly.

¶7 While the divorce was pending and after the resolution of the domestic abuse case, the guardian ad litem (GAL) submitted a proposed temporary order modifying placement. The GAL believed that it was in the best interest of the children to modify the existing order to allow Ricardo longer periods of placement with the children. The court approved of the modification over Julie's objection. A couple of months before trial, the GAL submitted another proposed order to modify

placement, this time proposing equal placement, which the court again granted over Julie's objection.

¶8 Both Julie and Ricardo testified and presented arguments to the court at their divorce trial. Julie argued at trial that the court should not award custody to Ricardo due to his history of domestic abuse against Julie. Julie asserted that Ricardo failed to prove that he successfully completed a certified treatment program aimed at combatting domestic abuse or saw a certified batterer's treatment provider such that he was able to overcome the presumption against custody. Ricardo argued that he received counseling from Loomis that was aimed at dealing with Ricardo's abuse issue and that this was sufficient to overcome the presumption against custody. The GAL agreed with Ricardo and asked the court to award Ricardo sole legal custody.

¶9 The circuit court determined that Ricardo had engaged in a pattern of domestic abuse and therefore the statutory presumption against awarding him custody applied. *See* WIS. STAT. § 767.41(2)(d)1. Notwithstanding, the court concluded Ricardo had rebutted the statutory presumption because he "successfully completed domestic abuse treatment[,]" explaining as follows:

> Although he did not complete a certified treatment program, § 767.41(2)(d)1. expressly contemplates equivalent treatment from a certified treatment provider. Based on a review of the treatment he received in [the domestic abuse case], the Court finds that Mr. Valadez obtained equivalent treatment from Tyler Loomis, who as a licensed professional counselor ("LPC") qualifies as a certified treatment provider. In fact, the State in that case itself recognized that this treatment was equivalent and satisfactory in accepting the treatment and amending the charge.

The court awarded sole legal custody of all four children to Ricardo. The court further ordered "equal shared [physical] placement, with a weekly rotating schedule."

¶10 Julie appeals. We include additional facts as necessary below.

## DISCUSSION

*The Circuit Court Erred in Concluding Ricardo Rebutted the Presumption Against Awarding Him Sole or Joint Custody*

¶11 In determining custody, the circuit court found that Ricardo engaged in a pattern of domestic abuse pursuant to WIS. STAT. § 767.41(2)(d)1., triggering a rebuttable presumption that an award of joint or sole legal custody to Ricardo would be "detrimental to the child[ren] and contrary to the best interest of the child[ren]." The court determined that Ricardo rebutted the presumption by presenting evidence that he "successfully completed treatment for batterers provided through a certified treatment program or by a certified treatment provider," *see* § 767.41(2)(d)1.a., and that an award of sole legal custody to Ricardo was in the children's best interest, *see* § 767.41(2)(d)1.b. Julie argues that the court erroneously determined that Ricardo rebutted the statutory presumption against joint or sole custody.

¶12 Child custody and placement determinations are committed to the sound discretion of the circuit court. ***Gould v. Gould***, 116 Wis. 2d 493, 497, 342 N.W.2d 426 (1984). We will sustain a discretionary decision if the court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. ***Liddle v. Liddle***, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987). In addition, we affirm the circuit court's findings of fact unless they are clearly erroneous, WIS. STAT. § 805.17(2), but we independently review any questions of law, ***Clark v.***

*Mudge*, 229 Wis. 2d 44, 50, 599 N.W.2d 67 (Ct. App. 1999). A court erroneously exercises its discretion if it applies the wrong legal standard. ***Brown County v. Shannon R.***, 2005 WI 160, ¶37, 286 Wis. 2d 278, 706 N.W.2d 269.

¶13 WISCONSIN STAT. § 767.41(2)(d)1. creates a rebuttable presumption that a parent who commits domestic violence against the other parent is not entitled to joint or sole custody of the children. It provides in relevant part as follows:

> [I]f the court finds by a preponderance of the evidence that a party has engaged in a pattern or serious incident of interspousal battery, ... or domestic abuse, ... there is a rebuttable presumption that it is detrimental to the child and contrary to the best interest of the child to award joint or sole legal custody to that party. The presumption under this subdivision may be rebutted only by a preponderance of evidence of all of the following:
>
>   a. The party who committed the battery or abuse has successfully completed treatment for batterers provided through a certified treatment program or by a certified treatment provider and is not abusing alcohol or any other drug.
>
>   b. It is in the best interest of the child for the party who committed the battery or abuse to be awarded joint or sole legal custody based on a consideration of the factors under sub. (5)(am).

Sec. 767.41(2)(d)1.a.-b.

¶14 None of the parties to this appeal challenges the circuit court's finding that Ricardo engaged in a pattern of domestic abuse such that the presumption against custody applies to him.[3] *See* WIS. STAT. § 767.41(2)(d)1. Where they disagree is whether Ricardo rebutted the statutory presumption by proving that he

---

[3] Ricardo and the GAL submitted a joint brief on appeal. Therefore, when we refer to the arguments made by Ricardo, they also encompass the GAL's position.

successfully completed "a certified treatment program" or other "treatment for batterers … by a certified treatment provider." *See* § 767.41(2)(d)1.a.

¶15 The resolution of this issue requires us to interpret WIS. STAT. § 767.41(2)(d)1. The "purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit. Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the language of the statute. If the meaning of the words are plain and unambiguous, a court's inquiry ends and there is no need to consult extrinsic sources of interpretation, such as legislative history. *Id.*, ¶¶45, 46. Statutory language is given its "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶45.

¶16 Statutes are "read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*, ¶46. When courts interpret a statute, they are not at liberty "to disregard the plain, clear words of the statute." *Id.* (citation omitted). "If the meaning of the statute is plain," courts "ordinarily stop the inquiry and give the language its 'common, ordinary, and accepted meaning.'" *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156 (citation omitted). "A dictionary may be utilized to guide the common, ordinary meaning of words." *Id.*

¶17 Ricardo testified that as part of the plea deal in his criminal case, he received "counseling for domestic abuse, anger and drinking through my counselor, Tyler [Loomis]." But Loomis did not testify, and Ricardo offered no other information about his counselor or the nature of his treatment. As we now explain, that is not enough evidence to establish that Ricardo received "treatment for

batterers provided through a certified treatment program or by a certified treatment provider." *See* WIS. STAT. § 767.41(2)(d)1.a.

¶18 In finding that Ricardo had "successfully completed domestic abuse treatment," the circuit court took "judicial notice" of the amended criminal charge. The court reasoned that because the state had "accepted" Ricardo's treatment in a criminal plea deal, that same treatment sufficed to rebut WIS. STAT. § 767.41(2)(d)'s presumption against awarding custody to an abuser. Ricardo suggests that we, like the circuit court, should review the CCAP entries in Ricardo's criminal case and rely on the fact that the district attorney's office approved Ricardo's treatment to conclude that he has met his burden of presenting evidence sufficient to overcome the presumption against custody. However, Ricardo fails to explain why it matters in this case that a prosecutor accepted his treatment for purposes of entering a plea agreement in a case that did not have a statute with the same requirements as § 767.41, which requires "treatment for batterers provided through a certified treatment program or by a certified treatment provider" to rebut the presumption. *See id.* Whether Loomis' counseling and credentials met that standard is a statutory interpretation question that cannot be answered by looking to a plea deal in a separate criminal case involving a different set of statutes and different considerations, when nothing suggests it met the statutory requirements at issue here.

¶19 In accepting Ricardo's argument that if the treatment was sufficient for the plea deal, it is sufficient under the custody statutes, the circuit court specifically acknowledged that Ricardo did not participate in a certified treatment program. However, without citing to any controlling cases or other legal support, the court determined that WIS. STAT. § 767.41(2)(d) allows for something other than *certified* programs or providers, concluding that any licensed professional counselor

8

can be considered a "certified" provider for purposes of rebutting the statutory presumption. As defined in our statute addressing licensed professionals, professional counseling covers a wide range of methods and models aimed at "achiev[ing] mental, emotional, physical, social, moral, educational, spiritual, vocational or career development and adjustment." WIS. STAT. § 457.01(6). Section 767.41(2)(d), on the other hand, is aimed at something more specific: "treatment for batterers provided through a certified treatment program or by a certified treatment provider." In that context, "certified" would imply a certification to treat batterers, not the more generalized work of a licensed professional counselor.

¶20 In rendering its decision here, the circuit court read words into the statute that are not there, indicating that the statute "expressly contemplates equivalent treatment" and ignored words that are there—"treatment for batterers provided through a certified treatment program or by a certified treatment provider." *See* WIS. STAT. § 767.41(2)(d). Courts "are bound to apply the plain language of the statute enacted by the legislature." ***Keller v. Kraft***, 2003 WI App 212, ¶17, 267 Wis. 2d 444, 671 N.W.2d 361. As a fundamental tenet of statutory interpretation, where possible, we render no word in a statute surplusage, but instead give meaning *to every word. See **Enbridge Energy Co. v. Dane County***, 2019 WI 78, ¶28, 387 Wis. 2d 687, 929 N.W.2d 572 (Statutory construction should not "create[] an avoidable surplusage problem[;]" rather, "[i]f possible, every word and every provision is to be given effect …. None should be ignored. None should needlessly be given an interpretation that causes it ... to have no consequence." (citation omitted)).

¶21 We see nothing in the statute indicating that it contemplates treatment that is not aimed at batterers and provided by a *certified* program or provider. We

must assume that the legislature chose to specify certified programs and providers by design and for a reason. We cannot ignore these words or assume that the legislature included them without assigning any meaning to them. *See **Kalal***, 271 Wis. 2d 633, ¶46.

¶22 WISCONSIN STAT. § 767.41 does not define "certified treatment program" or "certified treatment provider" or even "certified." As such, we may look to the common meaning of the term. "Certified" commonly means "endorsed authoritatively: guaranteed or attested as to quality, qualifications, fitness or validity." *Certified*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1993). To provide an example of when "certified" may be properly used in the context of a profession, Webster's defines a "certified public accountant" in relevant part as "an accountant … who has met the requirements of a state law and has been granted a state certificate." *Certified Public Accountant*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1993). It follows from these definitions that a certified treatment provider for batterers would be a treatment provider "who has met [certain] requirements" to justify granting him or her "a certificate" indicating

that he or she has been "endorsed authoritatively" as qualified and fit to treat batterers.[4]

¶23    Applying these principles and common definitions, we conclude that the words enacted by the legislature mean that one may only overcome the presumption against sole or joint custody set forth in WIS. STAT. § 767.41(2)(d)1. by successfully completing treatment designed for batterers and provided by a certified program or provider. We cannot ignore the plain language of the statute that so requires, nor can we assume that the words are mere surplusage. We therefore conclude that the circuit court erred in deciding that Ricardo overcame the presumption against custody on this ground and remand to the court because § 767.41 does not allow Ricardo to be awarded custody until he has successfully completed the proper treatment. *See Schwantes v. Schwantes*, 121 Wis. 2d 607, 622, 360 N.W.2d 69 (Ct. App. 1984) (courts have no power to award custody of minor children other than as provided by statute).[5] We note that the court ordered

---

[4] Given Ricardo's failure to establish that he successfully completed a certified batterer's treatment program, we need not address the particulars of what precisely is required to qualify. We note, however, that Wisconsin has a special set of batterer's treatment standards and a special organization—the Wisconsin Batterers Treatment Providers Association—that certifies providers who apply those standards. *See* WISCONSIN BATTERERS TREATMENT PROVIDER ASSOCIATION, https://thewbtpa.com (last visited Dec. 13, 2021). As the *Domestic Abuse Guidebook for Wisconsin Guardians Ad Litem* explains, the term "Certified Batterer Treatment refers to certification through the Wisconsin Batterer Treatment Provider Association (WBTPA)" and "[t]he WBTPA is the only statewide organization that provides this certification." Governor's Council on Domestic Abuse & End Domestic Abuse Wisconsin, *Domestic Abuse Guidebook for Wisconsin Guardians Ad Litem* at 95 (March 2017), https://www.wicourts.gov/publications/guides/docs/galguidebook.pdf. The *Domestic Abuse Guidebook for Wisconsin Guardians Ad Litem* is found on the court's website at www.wicourts.gov and contains a list of current certified treatment providers.

[5] Because our decision as to Ricardo's failure to demonstrate that he participated in a certified treatment program or was treated by a certified provider is dispositive, we do not address the parties' other arguments surrounding the circuit court's custody determination. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if we resolve an appeal based on one issue, we need not decide the other issues).

many conditions when awarding custody, such as requiring Ricardo to maintain absolute sobriety, identifying required communications regarding custody decisions, input on custody decisions, keeping the children in and with their same schools and doctors, and therefore we remand to the circuit court to reconsider its custody decision in light of our decision.

*Given Ricardo's Pattern of Domestic Abuse, the Circuit Court Failed to Address the Applicable Statutory Requirement When Ordering Placement*

¶24    As with custody determinations, we review a circuit court's decisions regarding physical placement under an erroneous exercise of discretion standard and "affirm the circuit court's decisions when the court applies the correct legal standard and reaches a reasonable result." *Landwehr v. Landwehr*, 2006 WI 64, ¶7, 291 Wis. 2d 49, 715 N.W.2d 180.  Julie argues that here the circuit court erroneously exercised its discretion by failing to consider, or even mention, the standard set forth in WIS. STAT. § 767.41(5)(bm), which applies when a court finds that one parent has engaged in a pattern of domestic abuse, when ordering shared placement of the children for Julie and Ricardo.  Ricardo fails to even refer to § 767.41(5)(bm) when attempting to defend the circuit court's placement decision in direct response to Julie's criticism thereof, thereby conceding Julie's argument on this point.  *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (arguments not refuted may be deemed conceded).

¶25    "Courts … have no power in awarding placement other than that provided by statute." *Wolfe v. Wolfe*, 2000 WI App 93, ¶17, 234 Wis. 2d 449, 610 N.W.2d 222.  WISCONSIN STAT. § 767.41(5)(bm) provides that when a court finds a pattern of domestic abuse, "the safety and well-being of the child and the safety of the parent who was the victim of the ... abuse shall be the paramount concerns in determining legal custody and periods of physical placement."  This is not a

12

rebuttable presumption, like the one addressing legal custody. The court's finding that Ricardo engaged in a pattern of domestic abuse against Julie automatically makes the safety of Julie and her children the most important factor in any physical placement determination.

¶26 The circuit court made no mention of WIS. STAT. § 767.41(5)(bm) when it ordered "equal shared placement." As stated above, Ricardo effectively concedes this failure by the court. Given our reversal based on the court's erroneous conclusion that Ricardo overcame the statutory presumption that he successfully completed the proper treatment, we decline to search the record to support the circuit court's decision. While the court made extensive findings regarding the parties' allegations and credibility, and placed various conditions in its order designed to ensure safety, we would be speculating as to the role the court's erroneous custody decision had in its placement decision. Thus, we remand to the court to reconsider its placement determination.[6]

## CONCLUSION

¶27 For the foregoing reasons, we conclude that the circuit court erred in determining that Ricardo proved by a preponderance of the evidence that he rebutted the presumption against custody by successfully completing treatment aimed at batterers provided through a certified treatment program or by a certified treatment provider and that the court failed to explicitly apply the proper legal standard set forth in WIS. STAT. § 767.41(5)(bm) requiring the court to make Julie's safety and

---

[6] Julie also argues that the court erroneously exercised its discretion in failing to equally divide the parties' retirement accounts. We agree with Ricardo that the court appears to have appropriately taken into account all retirement accounts. However, both parties agree that the court awarded Ricardo $2600 more than Julie from this asset class. Because the court divided the property on an asset by asset class basis, and stated an intention to equally divide the assets but failed to explain the deviation, the court should address on remand what appears to be a mistake.

that of her children a paramount concern in determining placement. Accordingly, we reverse and remand to the circuit court to conduct further proceedings consistent with this opinion.

*By the Court*.—Judgment reversed and cause remanded with directions.